# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP2067 |
| COMPLETE TITLE: | Mary E. Marlowe and Leslie R. Marlowe,<br>        Plaintiffs-Respondents-Petitioners,<br>    v.<br>IDS Property Casualty Insurance Company,<br>        Defendant-Appellant. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 340 Wis. 2d 594, 811 N.W.2d 894
(Ct. App. 2012 – Published)
PDC No: 2012 WI App 51

| | |
|---|---|
| OPINION FILED: | April 5, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | October 4, 2012 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Brown |
|   JUDGE: | Donald R. Zuidmulder |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | ABRAHAMSON, C.J., BRADLEY, J., concur (opinion filed). |
|   CONCUR & DISSENT: | PROSSER, J., concurs in part/dissents in part (Opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the plaintiffs-respondents-petitioners, there were briefs by *Ralph J. Tease Jr.* and *Rhonda L. Lanford*, and *Habush, Habush & Rottier, S.C.*, Green Bay, and oral argument by *Mr. Tease*.

For the defendant-appellant, there were briefs by *Michael P. Konz* and *Erik L. Fuehrer*, and *Gabert, Williams, Konz & Lawrynk, LLP*, Appleton, and oral argument by *Mr. Konz*.

An amicus curiae brief was filed by *James Friedman* and *Dustin B. Brown*, and *Godfrey & Kahn, S.C.*, Madison, on behalf of the Wisconsin Insurance Alliance, and oral argument by *Mr. Brown*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP2067
(L.C. No. 2011CV502)

STATE OF WISCONSIN     :     IN SUPREME COURT

Mary E. Marlowe and Leslie R. Marlowe,

     Plaintiffs-Respondents-Petitioners,

     v.

IDS Property Casualty Insurance Company,

     Defendant-Appellant.

**FILED**

**APR 5, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Modified and affirmed and, as modified, cause remanded to the arbitration panel with instructions.*

¶1 MICHAEL J. GABLEMAN, J. We review a published decision of the court of appeals[1] reversing the Brown County Circuit Court's declaratory judgment[2] limiting discovery in an arbitration proceeding to that allowed by Wis. Stat. § 788.07

---

[1] Marlowe v. IDS Property Cas. Ins. Co., 2012 WI App 51, 340 Wis. 2d 594, 811 N.W.2d 894.

[2] The Honorable Donald R. Zuidmulder presiding.

(2009-10).[3]   Mary E. Marlowe and Leslie R. Marlowe (the Marlowes) filed a claim with their insurer, IDS Property Casualty Insurance Company (IDS), for underinsured motorist benefits after a car accident.   The parties were unable to agree on a settlement and, pursuant to a provision of the insurance policy, submitted the dispute to an arbitration panel.   Prior to the anticipated arbitration hearing a conflict over discovery arose,[4] in which IDS sought broad discovery under Wis. Stat. ch. 804, the general civil procedure chapter, while the Marlowes refused to comply with such discovery on the grounds that § 788.07, the discovery provision designed specifically for arbitration, controlled, and permitted only the taking of certain depositions.[5]   Interpreting the policy's arbitration provision in light of our decision in Borst v. Allstate Ins. Co., 2006 WI 70, 291 Wis. 2d 361, 717 N.W.2d 42, the arbitration panel decided

---

[3] All subsequent references to state and federal statutes are to the versions in effect in 2010, when the dispute giving rise to this case began, unless otherwise indicated.

[4] Due to the conflict and the subsequent appeals, the hearing never took place.

[5] The differences between Wis. Stat. § 788.07 and Wis. Stat. ch. 804 are significant.   Section 788.07, which pertains only to arbitration, limits discovery in arbitration to "the taking of depositions to be used as evidence before the arbitrators, in the same manner and for the same reasons as provided by law for the taking of depositions in suits or proceedings pending in the courts of record in this state."   By contrast, ch. 804, which applies to civil litigation in the circuit courts, allows for a wide range of discovery tools, including interrogatories, production of documents, physical and mental examinations of parties, inspection of medical documents, and requests for admissions.   See generally ch. 804.

that IDS was entitled to ch. 804 discovery. Unsatisfied, the Marlowes successfully filed for declaratory judgment in the circuit court, obtaining an order reversing the arbitration panel's determination and directing that arbitration discovery would proceed within the narrow parameters set by § 788.07. The court of appeals reversed, concluding that the Marlowes were not permitted to pursue relief from the circuit court before the panel rendered a final decision on the award, and that full ch. 804 discovery was available to IDS.

¶2 We consider two issues: 1) whether the Marlowes were permitted to seek a declaratory judgment concerning the discovery dispute before the arbitration panel ruled on whether an award was appropriate and, if so, its amount; and 2) whether the panel properly established discovery procedures outside those outlined in Wis. Stat. § 788.07. Because no unusual circumstances justified an interlocutory appeal, we hold that the Marlowes' action in circuit court was premature. As to the second question, the legislature has set forth, in the form of § 788.07, a narrow scope of discovery for arbitration proceedings in the absence of an explicit, specific, and clearly drafted arbitration clause to the contrary. IDS failed to include any such language in its policy and we therefore instruct the panel to limit discovery to that provided for in § 788.07. Accordingly, we affirm the court of appeals insofar as it declined to allow the Marlowes an interlocutory appeal. However, insofar as the court of appeals granted IDS the benefit of full Wis. Stat. ch. 804 discovery, we modify its decision and

3

instead direct the panel to cabin discovery to the depositions contemplated in § 788.07, i.e., "depositions to be used as evidence before the arbitrators." Thus, the decision of the court of appeals is modified, and as modified, affirmed, and the cause is remanded to the arbitration panel with instructions.

## I. BACKGROUND

¶3 The relevant facts are few and straightforward. In 2007, Mary Marlowe was involved in a car accident with an underinsured driver. At the time of the accident, she was insured by IDS, under a policy that contained a section providing underinsured motorist coverage. Within that section, under the heading, "Arbitration," the policy provided that "[u]nless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply." (Bold in original.) The Marlowes submitted a claim to IDS and, after fruitless settlement discussions, the parties agreed, in accordance with the policy, that an arbitration panel would determine whether an award was appropriate and, if so, its amount.

¶4 To prepare for the arbitration hearing, IDS requested various types of discovery materials, including interrogatories, the production of documents, the procurement of medical, employment, and income tax records, several depositions, and an independent medical examination. As IDS read the policy, it was entitled to such materials because the "local rules" referred to in the arbitration provision were located in Wis. Stat. ch. 804,

4

which authorizes each of the aforementioned discovery tools. The Marlowes refused to comply with the request, explaining that they believed the "local rules" provision was ambiguous, and consequently understood Borst to limit discovery to the far narrower boundaries drawn in Wis. Stat. § 788.07, a provision allowing only for "the taking of depositions to be used as evidence before the arbitrators."[6]

¶5    After considering the parties' arguments on the issue, the arbitration panel ruled in IDS's favor, giving it the benefit of the broad arsenal of discovery devices described in Wis. Stat. ch. 804.    In the unanimous view of the three arbitrators, "[t]he term 'local rules of procedure[,'] as the policy employs it, is both clear and informative.    It denotes the civil rules of procedure that govern court proceedings daily in local courtrooms."    After the panel denied a motion to reconsider, the Marlowes filed an action in circuit court seeking a declaration under Wisconsin's Uniform Declaratory Judgment Act, Wis. Stat. § 806.04, that they had a legal right not to be subjected to the expansive discovery of ch. 804.    The circuit court agreed and issued the requested order.    At the

---

[6] At one point during the clash over the proper scope of discovery, the Marlowes offered, "in the spirit of attempting to reach an amicable resolution," to provide, in addition to the depositions mentioned in Wis. Stat. § 788.07, authorizations for all of Mary Marlowe's medical records dating back ten years from the accident, and to make her available for a two hour deposition.    That concession has no bearing on our resolution of the case, which hinges only on the type of discovery the law requires, not that which it may allow parties to offer to avoid unnecessary discord and delay.

hearing where it reached its determination, the circuit court explained that IDS should have included a more specific reference to the discovery it desired in its policy if it wanted to later take advantage of the breadth of ch. 804.

¶6 When the case reached the court of appeals, the tide returned to IDS's favor. In its decision, the court of appeals prohibited the Marlowes from turning to the courts before the arbitration proceedings were complete. Marlowe v. IDS Property Cas. Ins. Co., 2012 WI App 51, ¶¶8-18, 340 Wis. 2d 594, 811 N.W.2d 894. Despite that prohibition, however, the court of appeals decided to reach the merits of the discovery dispute and affirmed both the panel's reading of the policy as well as its understanding of the panel's authority to shape the scope of discovery as it saw fit. Id., ¶¶19-27. On the first point——that of the interlocutory appeal——the court of appeals looked for guidance to federal cases addressing similar issues. Id., ¶¶10-17. The court of appeals discerned in those cases a rule that "interlocutory review of arbitration panels' intermediate decisions" is available only "under limited and unusual circumstances." Id., ¶14. Seeing no such circumstances in the Marlowes' case, the court held that the circuit court should have waited until the panel rendered its final decision before weighing in on the discovery dispute. Id., ¶18.

¶7 The court of appeals framed the second issue as the scope of the arbitration panel's authority. According to the court, the panel had the "exclusive authority" to interpret the "local rules" provision because it "arguably refer[red] to the

scope of discovery," a procedural matter within the sole province of the panel under our opinion in <u>Borst</u> and that of the court of appeals in <u>Employers Ins. of Wausau v. Certain Underwriters at Lloyd's London</u>, 202 Wis. 2d 673, 552 N.W.2d 420 (Ct. App. 1996). <u>Id.</u>, ¶27.

¶8 The Marlowes petitioned this court for review. In order to clarify several important features of the arbitration system and its relationship to the courts, we granted that petition.

## II. STANDARD OF REVIEW

¶9 The first issue before us is whether the Marlowes' action for a declaratory judgment constituted an interlocutory appeal and, if so, whether it was permissible. Such an issue presents a purely legal question, and we thus consider it independently of the opinions by the circuit court and court of appeals, though benefitting from their analyses. <u>See generally</u> <u>State ex rel. Hass v. Wis. Court of Appeals</u>, 2001 WI 128, 248 Wis. 2d 634, 636 N.W.2d 707.

¶10 With respect to the second issue——whether the arbitration panel was entitled to establish discovery procedures outside those outlined in Wis. Stat. § 788.07——"[t]he scope of judicial review of an arbitration decision is," generally speaking, "very limited." <u>Orlowski v. State Farm Mut. Auto. Ins. Co.</u>, 2012 WI 21, ¶13, 339 Wis. 2d 1, 810 N.W.2d 775 (citation omitted). As such, "[t]here is a strong presumption of arbitrability where the contract in question contains an arbitration clause," and "[a]ny doubts concerning the scope of

7

arbitrable issues should be resolved in favor of arbitration." Cirilli v. Country Ins. & Fin. Servs., 2009 WI App 167, ¶14, 322 Wis. 2d 238, 776 N.W.2d 272 (citation omitted). Pursuant to the same deferential standards, an arbitrator's decision concerning an award will not be overturned unless "perverse misconstruction or positive misconduct is plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." City of Madison v. Madison Prof'l Police Officers Ass'n, 144 Wis. 2d 576, 586, 425 N.W.2d 8 (1988) (internal quotation marks, brackets, and citation omitted). But where, as here, a dispute implicates the scope of an arbitration panel's authority concerning discovery, an issue the legislature has spoken on, the standard of review is less deferential. As we explain in detail below, an arbitration panel's decision will be reversed when it allows for discovery different from that granted in § 788.07 unless the agreement between the parties contains an explicit, specific, and clearly drafted clause adopting or spelling out a different set of discovery guidelines. See generally Borst, 291 Wis. 2d 361.

### III. DISCUSSION

¶11 We hold as follows. As no unusual circumstances were present to justify an interlocutory appeal, the circuit court erred in declaring the Marlowes' rights on a procedural matter before the arbitration panel satisfied its responsibilities and settled the question of compensation. However, given that there was no explicit, specific, and clearly drafted agreement in the policy detailing the discovery procedures to follow, the panel

should not have granted IDS the use of Wis. Stat. ch. 804's full range of discovery mechanisms. Consequently, we return the action to the panel with instructions to limit discovery to the section enacted by the legislature for precisely these situations: Wis. Stat. § 788.07.

A. The Interlocutory Appeal

¶12 We consider first whether the Marlowes improperly sought interlocutory relief. The Marlowes contend that they did not seek such relief and, if they did, that it was permitted. Consistent with well-reasoned precedent from other jurisdictions and with the fundamental and crucial purposes of arbitration, we find that they did seek interlocutory relief, and that it was barred.

1. The Marlowes Sought Interlocutory Relief

¶13 To ascertain whether the Marlowes improperly pursued interlocutory relief, we must, as a threshold matter, determine whether they pursued interlocutory relief at all. Applying basic principles of appellate procedure, we have no difficulty in answering that they did.

¶14 The Marlowes' argument for why their filing in circuit court did not represent an interlocutory appeal hinges on their belief that the arbitration panel was not empowered to order Wis. Stat. ch. 804 discovery. As the Marlowes see it, since the panel had no authority to issue that order, its order was null and void ab initio, that is, from the beginning, and the circuit court was not reviewing the order at all, let alone on an interlocutory basis. The Marlowes' position is founded on

9

several fundamental misunderstandings of the law, and we cannot accept it.

¶15 First, the Marlowes' premise flows from an untenably theoretical and impractical characterization of judicial mechanics. Even if we suspend disbelief and assume with the Marlowes that an order exceeding an arbitration panel's power vanishes when the order is questioned in court, that does not change the fact that the filing in circuit court interrupts an ongoing proceeding before the panel. That is, regardless of whether the panel's discovery order was null or not, there was nevertheless an arbitration in progress at the time it was issued. It is this fact——not the correctness or validity of the order——that renders the action interlocutory. See, e.g., Brown v. Argosy Gaming Co., L.P., 360 F.3d 703, 706 (7th Cir. 2004) (defining an interlocutory action as "one that merely gives pause to the ongoing proceedings to resolve one issue in a larger, ongoing dispute . . . .") (Emphasis added.)

¶16 In any event, the arbitration panel indisputably had the authority to issue an order relating to discovery, the only complaint the Marlowes raise is whether it issued the correct discovery order. Throughout the course of this controversy, it has never been suggested by any party or decision-maker that the arbitration panel was forbidden from determining the boundaries of discovery. Rather, the Marlowes simply assert that the panel erroneously set those boundaries in accordance with one chapter of the statutes instead of another. It follows, then, as amicus Wisconsin Insurance Alliance helpfully points out, that from the

10

Marlowes' perspective, the panel would have acted within its jurisdiction if it had ordered discovery in line with Wis. Stat. § 788.07 but exceeded its jurisdiction by ordering discovery in line with Wis. Stat. ch. 804. If that were true, a panel would have jurisdiction only if the outcome happened to turn out to be right in the judgment of the courts. That is not how jurisdiction works. See, e.g., Gen. Comm. of Adjustment v. Mo.-Kan.-Tex. R.R Co., 320 U.S. 323, 337 (1943) ("When a court has jurisdiction it has of course authority to decide the case either way.") (emphasis added) (citation and internal quotation marks omitted). For the foregoing reasons, there can be no doubt that the circuit court's declaration of the Marlowes' rights granted them interlocutory relief.

2. Interlocutory Relief Was Not Available to the Marlowes

¶17 Having shown why the Marlowes' action in circuit court was interlocutory, we must now confront the question of whether they were permitted to seek such relief. In view of the important and well-established purposes of arbitration, they were not so permitted.

¶18 We start, as the court of appeals before us did, with the recognition that this issue is one of first impression in Wisconsin. Fortunately, though, it is far from that elsewhere. In the absence of binding authority construing the Wisconsin Arbitration Act, we look for guidance to decisions from other jurisdictions interpreting similar provisions of their own arbitration acts. Borst, 291 Wis. 2d 361, ¶30. Wisconsin Stat. §§ 788.10 and 788.11 set forth the circumstances in which a

11

court can take action on an arbitrator's decision, and thus form the bases for our inquiry into the availability of interlocutory relief on an arbitration ruling.  The same role is performed in the Federal Arbitration Act by 9 U.S.C. §§ 10 and 11, which contain nearly identical language to the corresponding Wisconsin provisions.   We  therefore  consult  the  non-binding  cases addressing  the  issue  as  persuasive  authority,  and  in  this instance we find them especially persuasive.

¶19  A  number  of  other  jurisdictions  have  held  that intermediate relief from arbitrators' decisions is not typically available.   See  Kristen  M.  Blankley,  Did  the  Arbitrator "Sneeze"?--Do  Federal  Courts  have  Jurisdiction  over "Interlocutory" Awards in Class Action Arbitrations?, 34 Vt. L. Rev. 493, 506 (2010) ("The courts, when usually confronted with non-final awards, claim that they should generally refrain from intervention and allow arbitration to run its course.").  These decisions  are  based  on  the  sound  theory  that  the  courts  must facilitate as much as possible the primary aims of arbitration: providing a forum to resolve disputes more quickly, efficiently, and cheaply than courts can.  See Compania Panemena Maritima San Gerassimo, S.A. v. J.E. Hurley Lumber Co., 244 F.2d 286, 289 (2d Cir. 1957)(noting  that  challenges  to  intermediate  arbitration decisions "result only in a waste of time, the interruption of the arbitration proceeding, and encourage delaying tactics in a proceeding  that  is  supposed  to  produce  a  speedy  decision."); Travelers Ins. Co. v. Davis, 490 F.2d 536, 544 (3d Cir. 1974) (declining  to  allow  an  interlocutory  appeal  of  an  interim

12

arbitration decision because "[p]iecemeal litigation would result"). In Wisconsin, as much as in the federal system, arbitration is designed to facilitate the speedy, efficient resolution of disputes without encumbering parties with all of the expenses and formalities associated with civil litigation in the courts. See, e.g., Franke v. Franke, 2004 WI 8, ¶24, 268 Wis. 2d 360, 674 N.W.2d 832 ("[P]ublic policy favors arbitration as promoting the efficient resolution of disputes, and as giving the parties what they bargained for, that is, an arbitrator's, not a court's decision."). Those advantages accrue not only to parties but to the circuit courts, which experience a lightening of their substantial dockets, saving the taxpayers money and litigants both money and time. See, e.g., Balt. & Ohio Chi. Terminal R.R. Co. v. Wis. Cent. Ltd., 154 F.3d 404, 409 (7th Cir. 1998) (Posner, J.) (remarking that one purpose of arbitration "is to lighten the pressure on the courts") (citation omitted). It is self-evident that any rule encouraging parties to shuttle their cases to and from court in the midst of an arbitration proceeding would substantially slow down the arbitration process and impose significant costs on the parties, thereby defeating the most central objectives of arbitration. We therefore adopt the sensible rule followed by the authorities cited above, and hold that in Wisconsin a party involved in an arbitration proceeding must ordinarily wait until the arbitrators have reached a final decision on the award to be given, if any, before turning to the circuit courts.

13

¶20 Those courts that have permitted interlocutory review during an arbitration proceeding have done so only in rare circumstances that present a compelling reason to depart from the normal practice. For instance, interlocutory appeals have been entertained when the intermediate ruling could subject the aggrieved party to irreparable harm, Aerojet-General Corp. v. Am. Arbitration Ass'n, 478 F.2d 248, 251 (9th Cir. 1973) (regarding the fixing of venue), or when such review is necessary to preserve assets pending a final ruling from the arbitrator on the award. Yasuda Fire & Marine Ins. Co. v. Cont'l Cas. Co., 37 F.3d 345, 347-48 (7th Cir. 1994). Again, we embrace the unassailable logic underlying these cases, as they properly balance the need for efficient and orderly arbitration proceedings with the need for an occasional exception to accommodate especially urgent or potentially irreparably prejudicial matters that demand the immediate attention of the courts.

¶21 The Marlowes do not suggest that the discovery dispute at arbitration was unusual in such a way as to justify intermediate intervention by the circuit court, and we see no evidence to that effect. On the contrary, there has been no showing that the request for limited discovery was either especially urgent or that it posed the threat of irreparable injury. Tellingly, in the only Wisconsin case involving a similar discovery dispute, we remanded the cause back to the arbitration panel after it had allowed overbroad discovery and issued an award, Borst, 291 Wis. 2d 361, ¶4, thus indicating

that such disputes can be effectively resolved within the course of the ordinary appellate process, without resorting to inefficient, time-consuming practices which defeat the very purpose of arbitration. While certainly not dispositive of the matter, this precedent underscores why the arbitration panel here was entitled to fully discharge its duties before being second-guessed on an intermediate matter by the circuit court.[7] As a result, we affirm the court of appeals decision insofar as it correctly held that the Marlowes' action for declaratory relief constituted an improper interlocutory appeal.

## B. The Discovery Dispute

¶22 Although it seems at first blush incongruous for us to first hold that the Marlowes were not permitted to seek interlocutory relief and then grant such relief, we do so because the court of appeals unnecessarily and incorrectly addressed the merits of the discovery dispute before us. The court of appeals elected to address the discovery dispute while recognizing that it did not need to reach the question after holding that an intermediate appeal was barred. Marlowe, 340

---

[7] As it is unnecessary to the resolution of this case, we do not demarcate today the full range of situations in which intermediate relief may be available to a party challenging an adverse decision made at arbitration. See State v. Smith, 2012 WI 91, ¶62 n.19, 342 Wis. 2d 710, 817 N.W.2d 410 (reminding "that the court resolves the facts before it, and does not issue advisory opinions or address hypothetical facts") (citation omitted), cert. denied, 568 U.S. __, 133 S. Ct. 635 (2012). We caution that other circumstances may arise in which such appeals may be appropriate, and they should be considered on their own facts, under the same broad principles we enunciate here.

Wis. 2d 594, ¶19 n.8.  As we will show, the court of appeals erred in concluding that the arbitration panel had the exclusive authority to dictate the discovery procedures to follow, and the arbitration panel erred in ordering full Wis. Stat. ch. 804 discovery.  Therefore, if we were to limit our review to the issue of interlocutory relief, we would allow an erroneous rule to retain the force of law, not only in this case, but in all others.  Moreover, further delay of the issue's ultimate resolution would impede even further the efficient disposition the parties bargained for by agreeing to arbitration.  Lastly, we will be required to answer the important question presented by the discovery dispute sooner or later.  It would only frustrate judicial economy were we to unnecessarily put the question off for another day, particularly when we would thereby cause arbitration in this case to proceed under the wrong statute in violation of a clear legislative dictate.  With that in mind, we choose to take up the question sooner rather than later.[8]

---

[8] As the concurrence sees it, our reasoning on this point "justif[ies] judicial intervention by the circuit court . . . ." Concurrence, ¶67 (emphasis added).  Phrased differently, the concurrence believes that the unusual circumstances present here warranted interlocutory relief at every level of the court system.  As should be clear from our analysis, though, the reasons requiring us to reach the discovery dispute——the fact that the court of appeals erroneously reached and decided the question, the gross and perverse inefficiency of further delay, and the inevitability of our ultimate consideration of the issue——are reasons that apply with special force here, and have little to no relevance to the circuit court.  That court, unlike our own, was not required to correct an erroneous, published appellate opinion, because the case had not yet arrived at the

¶23  As we demonstrate below, a fair reading of the policy, under our binding and well-reasoned case law, prohibited the arbitration panel from ordering full Wis. Stat. ch. 804 discovery.  That same case law allows for judicial correction of the panel's error.  Accordingly, we instruct the arbitration panel to limit discovery to that provided for in Wis. Stat. § 788.07.

1. Discovery Should Have Been Limited to Wis. Stat. § 788.07

¶24  From the onset of this dispute, the central importance of one decision has been acknowledged by all involved: our opinion in Borst.  Upon review of that case, we find its

---

appellate level and because it would not have been empowered to do so.  In addition, there was far less of a demand for expeditiousness in the circuit court's disposition than ours, as the case had been pending for a significantly shorter period at that time and was undergoing its first stage of judicial review, not its third.  Finally, it was not so urgent as a state-wide matter for the circuit court to resolve the question, as its opinion bound only the parties and not, like our own, all Wisconsin contract-drafters, contract-signers, and courts.  See Raasch v. City of Milwaukee, 2008 WI App 54, ¶8, 310 Wis. 2d 230, 750 N.W.2d 492 (Ct. App. 2008) ("[A]lthough circuit-court opinions may be persuasive because of their reasoning, they are never 'precedential.'") (emphasis in original) (citation omitted).  To the extent the concurrence believes that some unique circumstance justified the circuit court's interlocutory intervention, we see no persuasive reasoning to that effect in the concurrence itself, and no reasoning to justify that result at all in our own discussion, in the briefs, or in any authority that has been brought to our attention.  The concurrence observes that it is incongruous not just at first blush, but at "second[] or third blush" to find judicial relief from the circuit court premature while granting it here.  Concurrence, ¶67.  That may be, but the concurrence cannot resolve the incongruity either, no matter how much blushing it does.

17

application here clear. If IDS desired to utilize Wis. Stat. ch. 804 discovery, it was required to expressly, clearly, and specifically say so in its policy. Because it did not, the panel erred in ordering such discovery and Borst compels us to correct the error.

### a) Borst Is Clarified and Reaffirmed

¶25 Although we do not share IDS's view that the facts of Borst are particularly helpful to our decision here, in light of its unequivocal holding, we briefly recite the relevant details to provide context and to address IDS's argument. In Borst, the plaintiff was injured in a car accident with an uninsured motorist and filed a claim for compensation with his insurer, Allstate Insurance Company (Allstate). 291 Wis. 2d 361, ¶5. After settlement negotiations failed, the claim was submitted to arbitration pursuant to a provision in the policy that was silent on the question of the scope of discovery. Id., ¶8. In anticipation of the arbitration hearing, Allstate asked Borst for answers to written interrogatories, document production, and medical authorizations. Id., ¶10. Borst refused to comply, instead filing a motion to quash the discovery. Id. Eventually, Borst sued Allstate in circuit court on claims of breach of contract, bad faith, and fraud and misrepresentation. Id., ¶12. Borst also sought a permanent injunction enjoining further arbitration. Id. After the circuit court remanded the matter back to the arbitrators, the panel allowed Allstate's requested broad discovery and decided the award, the circuit

court confirmed that award, and the court of appeals then certified the case to this court.

¶26 As for the most important aspect of Borst——its holding——this court unanimously ruled in that case that the panel erred in permitting extensive discovery and should instead have confined it to the depositions afforded in Wis. Stat. § 788.07.  We began our consideration of the issue with a summary, in a paragraph worth quoting in full for reasons that will soon be apparent, thusly:

> We conclude that arbitrators have no inherent authority to dictate the scope of discovery, and absent an express agreement to the contrary, the parties are limited to depositions as spelled out in Chapter 788.  We agree with the State Bar that parties would be well-served to either: (1) explicitly address the scope of discovery and the procedures to resolve disputes regarding discovery; or (2) reference a set of established [Alternative Dispute Resolution] provider rules that specify how discovery should be handled.

Id., ¶56.

¶27   To reach that result, the Borst court first examined the text of Wis. Stat. § 788.07 and the Wisconsin Arbitration Act as a whole, concluding that neither mentioned any type of discovery other than "depositions to be used as evidence before the arbitrators."  Id., ¶58 (quoting § 788.07).  "To allow for the amount of discovery Allstate seeks," the court went on, "we would have to read more into § 788.07 than is present in the statutory language," an approach that would transgress established rules of statutory construction.  Id. (citation omitted).

19

¶28 Continuing its analysis, Borst observed that because arbitration is a matter of contract, the "parties can contract to allow arbitrators a wide amount of latitude in managing the arbitration, subject to the constraints of the law." Id., ¶59 (citing Employers, 202 Wis. 2d 673). Justice Wilcox, speaking for the court, therefore determined that "absent a contractual provision specifying how discovery will be handled, the parties are limited to the discovery procedures provided in" Wis. Stat. § 788.07. Id. In support of that conclusion, the court reasoned that a grant of inherent authority to arbitrators to order broader discovery where the policy is silent on the scope of discovery "would give us pause as we do not want to turn the arbitration process into another trial system," with all of its attendant formalities and expenses. Id., ¶¶60, 61. Stated differently, "[a]rbitrators have no inherent authority to dictate the scope of discovery and absent an express agreement, the parties are limited to the procedure for depositions, as described in Wis. Stat. § 788.07." Id., ¶63. "[T]he better approach," we therefore concluded, "is to leave it to the parties, in the future, to ensure arbitration agreements are clearly drafted, and detail the necessary components and procedures of the desired arbitration." Id., ¶60. Turning to the facts at hand, we explained that "there were no set provisions in the insurance contract that detailed the terms of the discovery in the arbitration. Therefore, if the parties decide to conduct another arbitration, discovery will be limited

to depositions as detailed in Wis. Stat. § 788.07." Id., ¶62 (footnote omitted).

¶29 Given the overwhelming significance of Borst to the case at bar, we pause to clarify its holding and reaffirm its soundness. Borst was not as precise as it might have been on what is required of an arbitration clause in order for the parties to have access to discovery broader than that contemplated in Wis. Stat. § 788.07. To be sure, the opinion did use a number of terms with roughly similar, if not identical, meanings: "express," "explicitly," "specify," "clearly drafted," "detail," and so on. Yet as IDS fairly observes, most of these terms are not presented as formulations of the holding, and some are not even formulated as requirements. For example, the Borst court indicated "that parties would be well-served to . . . explicitly address the scope of discovery," id., ¶56 (emphasis added), not that they had to. Likewise, the court advised that "the better approach is to leave it to the parties, in the future, to ensure arbitration agreements are clearly drafted," id., ¶60 (emphasis added), but stopped short of announcing that inferior approaches would necessarily deprive parties of Wis. Stat. ch. 804's discovery tools.

¶30 We need not be detained by such ambiguity long, for we conclude that Borst's several formulations of the standard cohere to form a single holding: for a party in arbitration to enjoy discovery outside of Wis. Stat. § 788.07, the insurance policy must provide for it expressly, explicitly, specifically,

21

and in a clearly drafted clause. To begin, the various iterations of the standard set forth in Borst are plainly not in conflict with one another. That is to say, a provision may plainly be express, explicit, specific, and clearly drafted all at the same time. More importantly, if an arbitration panel has no inherent authority to order Wis. Stat. ch. 804 discovery in the absence of a policy provision to the contrary, and if that is in part because the legislature has enacted a statute to address this narrow area of law, it naturally follows that the discovery provision must be "express," "explicit," "specific," and "clearly drafted."[9] Without that requirement, as we explain shortly, § 788.07 would lose all force, and we cannot treat legislative commands so cavalierly. For purposes of summary and clarification, everything we said in Borst about how a policy can authorize discovery broader than that envisioned by § 788.07, whether hortatory or mandatory, is the law: to permit such discovery, the policy must provide for it explicitly, specifically, and in a clearly drafted clause.[10]

---

[9] Because the words "express" and "explicit" have similar meanings, and because we believe "explicit" covers the same ground as "express" and more, in the interest of simplicity we henceforth omit the word "express" from the standard. See The American Heritage Dictionary 626 (5th ed. 2011) (indicating that "express" is synonymous with "explicit").

[10] The concurrence/dissent characterizes these requirements as "tough new conditions" set by today's opinion. Dissent, ¶114. They may be tough, but they are certainly not new, as each word appears in Borst v. Allstate Ins. Co., 2006 WI 70, 291 Wis. 2d 361, 717 N.W.2d 42. For ease of reference, we will henceforth refer to the concurrence/dissent as simply "the dissent."

¶31 Understood in these terms, the holding of Borst is as vital today as it was at the time the case was decided. In short, arbitration must remain a speedy, cost-efficient alternative to conventional litigation, not an equally slow, cumbersome process that simply happens to take place in front of an arbitration panel rather than a circuit court judge. Id., ¶60 ("[W]e do not want to turn the arbitration process into another trial system."); cf. Franke, 268 Wis. 2d 360, ¶24 ("[P]ublic policy favors arbitration as promoting the efficient resolution of disputes, and as giving the parties what they bargained for, that is, an arbitrator's, not a court's decision."). With Wis. Stat. ch. 804 discovery, arbitration proceedings become, quite literally, the mirror image of civil litigation, at least as respects discovery. As Borst recognized, arbitration is a creature of contract, and if parties desire to engage in the same time-consuming and burdensome discovery tactics that lengthen delays and increase costs in the circuit courts, that is their prerogative. 291 Wis. 2d 361, ¶59 ("[P]arties can contract to allow arbitrators a wide amount of latitude in managing the arbitration . . . .") (Emphasis added.) But that is a far cry from an ever-present legal entitlement to such tactics in a proceeding designed to do without them.[11]

_____

[11] In its ruling on the discovery dispute, the arbitration panel insisted that, "[if] the purpose of arbitration is to achieve an expedited, efficient decision that ultimately determines the truth, more, not less, preparation for hearing is the most sensible way to achieve that . . . ." We do not grasp the panel's reasoning. Certainly an argument could be made that

23

¶32 The second, and related, strain of reasoning underpinning <u>Borst</u> is equally persuasive to us now: the legislature has provided a boundary for the scope of discovery in arbitration to serve as the default, and, in the absence of any contractual agreement to the contrary, that boundary should be given effect. We fully agree with <u>Borst</u> that we would insufficiently respect our co-equal branch were we to allow arbitrators to ignore a legislative dictate at will. 291 Wis.2d 361, ¶58 ("To allow for the amount of discovery Allstate seeks, we would have to read more into § 788.07 than is present in the statutory language."). If arbitrators could order discovery outside the confines of § 788.07 whenever they chose, regardless of what the policy provided, the statute would lose all force, an outcome we are loath to sanction. <u>See</u> <u>State ex rel. Kalal v. Cir. Ct. for Dane Cnty.</u>, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110 ("It is, of course, a solemn obligation of the judiciary to faithfully give effect to the laws enacted by the legislature . . . ."). And, as should be evident already, we believe the legislature's approach to discovery in arbitration was eminently reasonable, as it is entirely in keeping with the

---

more expansive discovery better facilitates a search for the "truth," but we fail to understand how broader discovery could possibly be regarded as more "expedited" or "efficient." Similarly, the panel took pains to note that Wis. Stat. ch. 804 does "not contemplate unfettered discovery," but rather discovery "that is quick and efficient, [and] cost effective." That may be, but it surely does contemplate discovery that is <u>less</u> fettered than that authorized by Wis. Stat. § 788.07, as well as <u>less</u> quick, <u>less</u> efficient, and <u>less</u> cost effective, which is exactly the point.

fundamental goals of the system: efficient, inexpensive resolution of disputes.

¶33 There is one other aspect of <u>Borst</u> that requires clarification. To repeat language we have already quoted, the <u>Borst</u> court remarked that "parties would be well-served to <u>either</u>: (1) explicitly address the scope of discovery and the procedures to resolve disputes regarding discovery; <u>or</u> (2) reference a set of established [Alternative Dispute Resolution] provider rules that specify how discovery should be handled." 291 Wis. 2d 361, ¶56 (emphasis added). As suggested by our emphasis, it is important that <u>Borst</u> phrased this as an either/or proposition. That is, parties can make available discovery that differs from the depositions contemplated by Wis. Stat. § 788.07 without necessarily referring to a set of discovery guidelines established elsewhere, so long as the parties spell out the discovery guidelines themselves in the arbitration agreement. In other words, rather than providing, say, that "Wis. Stat. § 788.07 will govern all discovery in preparation for the arbitration hearing," a policy could instead enumerate the types of discovery the parties would have access to in arbitration, such as interrogatories, medical examinations, and so on. However, if a policy takes that approach, it must meet the same standard that applies when an arbitration clause adopts a set of guidelines articulated

elsewhere: it must express the types of discovery explicitly, specifically, and in a clearly drafted clause.[12]

¶34 Before turning to the application of Borst here, one final point must be made. Wisconsin Stat. § 788.06(2) authorizes arbitrators and parties' representatives to issue subpoenas under Wis. Stat. § 805.07, the general subpoena statute in the code of civil procedure. In contradistinction to the dissent, we do not understand § 788.06(2) to expand the scope of arbitration discovery because the provision relates to the arbitration hearing itself, not the discovery that may precede it. The heading of the statute confirms our interpretation, as it reads, "Hearings before arbitrators;

---

[12] The dissent rejects this rule, but it is not clear exactly why or in favor of what. In places, the dissent suggests that Borst was wrongly decided. Dissent, ¶111 ("Borst's interpretation of Wis. Stat. § 788.07 created a restrictive rule, but that rule disregarded the adjacent statute . . . ."). Elsewhere, the dissent instead pins the blame on today's majority, accusing it of injecting a novel misunderstanding into the law. See, e.g., id., ¶114 (describing the "explicit, specific, and clearly drafted" test as imposing "tough new conditions . . . .") (emphasis added); ¶88 ("[T]he majority opinion undercuts the contractual authority of arbitrators and creates a serious disincentive for parties to agree to arbitration.") (Emphasis added.) Both cannot be true. Although the dissent somewhat ambiguously proposes that the "court should pursue" the "options" of "clarify[ing], modif[ying], or distinguish[ing]" Borst "on the facts," dissent, ¶100, the dissent's bottom-line, that the "explicit, specific, and clearly drafted" test be discarded, is fundamentally incompatible with Borst's unequivocal holding and its underlying reasoning. We see no way in which those words and the rationale behind them can be "clarified, modified, or distinguished" out of the opinion. However it chooses to couch the issue, the dissent would essentially have us overrule Borst, and for the reasons stated, we decline to do so.

procedure."[13]  (Emphasis added.)  See Pure Milk Prods. Coop. v. Nat'l Farmers Org., 64 Wis. 2d 241, 253, 219 N.W.2d 564 (1974) ("Although the title is not part of the statute it may be persuasive of the interpretation to be given the statute."). Presumably, the parties, the arbitration panel, and the court of appeals all acknowledged this fact, as none mentioned

---

[13] In a passing footnote, the dissent intimates that the appearance of the word "Hearings" in the heading is inconsequential on account of the semicolon and text that follow: "Hearings before arbitrators; procedure." Dissent, ¶106 n.7.  According to the dissent, the "Hearings" goes with Wis. Stat. § 788.06(1), whereas the "procedure" goes with (2).  Id. In line with that reading, the dissent flatly asserts that "[t]he procedure applies to more than hearings because of the references to Wis. Stat. § 805.07."  Id.  But the following sections are as much about arbitration procedure as are the subpoena provisions.  See Wis. Stat. § 788.07 (dealing with depositions in arbitration); Wis. Stat. § 788.08 (requiring that awards be in writing and signed by a majority of the arbitration panel); Wis. Stat. § 788.09 (setting forth the procedure for confirming arbitration awards in court); Wis. Stat. § 788.10 (establishing the mechanisms for vacating awards and obtaining a rehearing by the arbitrators).  And as the dissent implies, at least some of § 788.06(2) is unquestionably about hearings, namely its references to "the circuit court for the county in which the hearing is held" and to "[w]itnesses and interpreters attending before an arbitration." (Emphasis added.)  If the legislature intended to enact two unrelated provisions, one about hearings and one covering subpoenas with no connection to hearings, it presumably would have made § 788.06(1) its own section, and entitled it "Hearings before arbitrators," and given § 788.06(2) its own section and entitled it "Subpoenas," much as it did with the very next section, which is entitled "Depositions" and discusses, unsurprisingly, depositions.  We prefer to begin with the assumption that the legislature's organizational scheme and choice of headings matters, rather than discounting it out of hand.  See, e.g., State v. Leitner, 2002 WI 77, ¶33, 253 Wis. 2d 449, 646 N.W.2d 341 (reiterating that the court presumes that the legislature acted carefully in drafting laws).

27

§ 788.06(2) or the subpoena power at any stage of the proceedings.[14] Borst did not consider § 788.06(2) either, we assume for the same good reasons, namely, that everyone involved in the case tacitly recognized that the provision dealt with hearings, not discovery.[15]

¶35 The statutory history of Wis. Stat. § 788.06(2) confirms our interpretation of its significance. See State v. Gilbert, 2012 WI 72, ¶16, 342 Wis. 2d 82, 816 N.W.2d 215 ("[A] review of statutory history is part of a plain meaning analysis.") (citation and internal quotation marks omitted), cert. denied, 568 U.S. __, 133 S. Ct. 560 (2012). The first version of the statute appeared in 1931. Compare Wis. Stat. ch. 298 (1929) with Wis. Stat. ch. 298 (1931). At that time, only the arbitrators, not the parties, were empowered to issue subpoenas. See Wis. Stat. § 298.06 (1931). Moreover, the statute contained several indications that the subpoena power related only to the hearing, not to pre-hearing discovery. For example, § 298.06 authorized the arbitrators to "summon in writing any person to attend before them or any of them as a

---

[14] The circuit court did refer to Wis. Stat. ch. 788's subpoena powers at several times during the hearing, but chiefly to make the point that IDS never applied to the panel to use such powers.

[15] In its briefs here and in the court of appeals in Borst, Allstate mentioned Wis. Stat. § 788.06(2) in passing, purely so as to distinguish the dispute from a federal case addressing the question of whether arbitration panels are empowered to subpoena third parties. Allstate, like IDS, never asked us to construe § 788.06(2) as expanding the scope of discovery at arbitration.

witness . . . ." Id. (Emphasis added.) The statute also instructed that subpoenas in arbitration would "be served in the same manner as subpoenas to appear and testify before the court." (Emphasis added.) Such language strongly reinforces the view that the subpoena power related to hearings, not to discovery.

¶36 In 1985, the arbitration subpoena statute, by then renumbered Wis. Stat. § 788.06, took on its current form. See 1985 Wis. Act 168, § 1. The principal substantive change in the statute was the extension of the subpoena power from solely the arbitrators to the arbitrators and the parties (through their representatives). See Wis. Stat. § 788.06(2) (1985). Presumably as part of the effort to modernize, condense, and clarify the statute, however, the language quoted above referring to hearings was removed. However, two significant additions were made that demonstrate the subpoena power continued to relate only to hearings. First, the statute was now entitled, "Hearings before arbitrators; procedure." Id. (Emphasis added.) Equally importantly, the legislature inserted the following sentence into § 788.06(2): "If any person so served neglects or refuses to obey the subpoena, the issuing party may petition the circuit court for the county in which the hearing is held to impose a remedial sanction . . . in the same manner provided for witnesses in circuit court." Id. (Emphasis added.) It would be peculiar, to say the least, for a discovery statute to refer to a hearing that might never occur as though it were inevitable. See, e.g., Bell Atlantic Corp. v. Twombly,

29

550 U.S. 544, 559 (2007) (noting that "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings.").[16]

---

[16] Because Wis. Stat. § 788.06 is unambiguous, we need not consult any extrinsic sources to ascertain the intent behind it, such as legislative history. See, e.g., State v. Lamar, 2011 WI 50, ¶23, 334 Wis. 2d 536, 799 N.W.2d 758 ("If the language [of a statute] is ambiguous, however, we look beyond the language and examine extrinsic sources of statutory interpretation, such as the legislative history of the statute.") (citation omitted). Even if it were accepted, arguendo, that the statute was ambiguous, however, the legislative history would reaffirm our reading. Concededly, the language from the 1931 statute more directly conveyed the fact that it was limited to hearings than does the current statute, given that it explicitly cabined the subpoenas to summons to "any person to attend before [the arbitrators] . . . as a witness . . . ." Wis. Stat. § 298.06 (1931) (emphasis added). By contrast, the current incarnation of the statute does not so precisely define the proceedings to which the subpoenas apply. See § 788.06. Nevertheless, the only notes in the sparse legislative materials for 1985 Wis. Act 168, § 1 that shed any light on the purpose of the alterations focus exclusively on the expansion of the subpoena power to parties' representatives; they say nothing about an expansion of the statute from hearings to discovery. See Drafting File, 1985 Wis. Act 168, Judicial Council Note on A.B. 498, Legislative Reference Bureau, Madison, Wis. ("The revised section permits arbitration subpoenas to be issued by any arbitrator or by an attorney for a party who has been delivered blank subpoenas by an arbitrator. It conforms arbitration subpoena practice to that followed in circuit court.") (emphasis added); Drafting File, 1985 Wis. Act 168, Fiscal Estimate by the Director of State Courts on A.B. 498, Legislative Reference Bureau, Madison, Wis. ("This bill would allow arbitration subpoenas to be issued by any arbitrator or by an attorney for a party who has been delivered blank subpoenas by an arbitrator. Presently, a majority of the arbitrators sitting at the hearing must sign the summons.") (Emphasis added.) It can only be inferred from this single-minded focus that the legislature had no desire to expand subpoenas from the hearing context to that of discovery.

¶37 There is no cause to apply Wis. Stat. § 788.06(2) here, and there was no cause to do so in Borst.[17]

¶38 For the stated reasons, Borst was rightly decided and it remains good law. We now apply it to the present case.

b) The Policy Did Not Satisfy Borst's Requirements

¶39 Reviewing the policy under the well-reasoned Borst decision, we hold that the arbitration panel erred in ordering broad discovery when the policy contained no explicit, specific, and clearly drafted clause making such discovery available.

¶40 There are two pertinent passages from the policy. As noted, the one that has been at the crux of this dispute, and therefore the one on which most of our analysis will focus, provides that "[l]ocal rules of law as to procedure and evidence will apply" at arbitration. Before we get to that clause, however, there is another provision that warrants examination. That provision indicates that "[a] person seeking any coverage must: . . . [c]ooperate with [IDS] in the investigation, settlement or defense of any claim or suit" and "[s]ubmit, as often as [IDS] reasonably require[s] . . . [t]o physical exams." IDS does not contend in its brief here that this provision

---

[17] The dissent complains that it "makes little sense" that Wis. Stat. § 788.06 is confined to hearings. Dissent, ¶106. Maybe so, but it was the legislature's decision, not ours, and we do not sit in judgment of its wisdom. See, e.g., Progressive Northern Ins. Co. v. Romanshek, 2005 WI 67, ¶60, 281 Wis. 2d 300, 697 N.W.2d 417 ("When acting within constitutional limitations, the legislature settles and declares the public policy of a state, and not the court.") (internal quotation marks and citation omitted).

31

imposes a freestanding requirement independent of the arbitration clause that the Marlowes violated by refusing to engage in full Wis. Stat. ch. 804 discovery. Asked at oral argument whether that was his position, counsel for IDS responded that such an argument had been made to the arbitration panel, and that if IDS had sought a medical examination pursuant to the provision that the Marlowes "would have" refused. We decline to entertain an argument that has not been properly submitted to our consideration, and we decline to base our ruling on a hypothetical series of events. State v. Smith, 2012 WI 91, ¶62 n.19, 342 Wis. 2d 710, 817 N.W.2d 410 (reminding "that the court resolves the facts before it, and does not issue advisory opinions or address hypothetical facts") (citation omitted), cert. denied, 568 U.S. __, 133 S. Ct. 635 (2012).

¶41 Nevertheless, for purposes of illuminating and clarifying the rule established by Borst, we note that such a provision would not, even if properly preserved and argued, allow for full Wis. Stat. ch. 804 discovery. Most significantly, the language gives no indication, either by content or context, that it speaks to discovery, let alone to discovery preceding arbitration. Such an omission is even more fatal juxtaposed with the fact that the policy does contain a provision under the explicit heading of "Arbitration," a provision that says nothing about physical examinations or anything of the sort. For a policy to adequately describe the discovery mechanisms to be used at arbitration it must, at the very least, indicate in the policy that the mechanisms are in

fact <u>discovery</u> mechanisms, and that they are meant to be available <u>at arbitration</u>.  Anything short of that plainly does not qualify as explicit, specific, or clearly drafted, and thus does not satisfy the <u>Borst</u> standard.[18]

¶42 Moving to the heart of the dispute, we next review the arbitration clause itself, which provides that "[l]ocal rules of law as to procedure and evidence will apply."  The arbitration panel thought this cursory clause "clear and informative."  It is neither, and it consequently does not come remotely close to satisfying the bar established by <u>Borst</u>.

¶43 Beginning with the most obvious point, the sentence says nothing about discovery whatsoever, let alone which discovery rules the drafter had in mind; it mentions only "procedure and evidence."  Such broad and amorphous terms could connote any number of things.  Perhaps most problematically,

---

[18] "[I]t is imperative" to the dissent "for the majority to explain why the discovery sought by IDS was not explicitly authorized" by this language in the policy.  Dissent, ¶123.  It is imperative to us as well, and that is why we have explained it in detail: because IDS is not relying on the language (something the dissent neglects to mention) and because the language says nothing about discovery in a policy that specifically addresses the issue.  The language may represent "explicit, specific, and clear" guidelines, <u>id.</u>, ¶43, but they are far from "explicit, specific, and clear" guidelines governing <u>discovery</u>, and that is precisely what the law requires.  <u>See</u> <u>Borst</u>, 291 Wis. 2d 361, ¶62 ("[T]here were no set provisions in the insurance contract that detailed <u>the terms of the discovery in the arbitration</u>.  Therefore, if the parties decide to conduct another arbitration, discovery will be limited to depositions as detailed in Wis. Stat. § 788.07.") (emphasis added); ¶63 ("Arbitrators have no inherent authority to dictate <u>the scope of discovery</u> and absent an express agreement, the parties are limited to" § 788.07) (emphasis added).

they could easily be understood to relate only to the hearing itself, not to anything that preceded it.  We begin, therefore, with the uncontested premise[19] that the language in question is ambiguous.   See Folkman v. Quamme, 2003 WI 116, ¶13, 264 Wis. 2d 617,  665  N.W.2d 857 ("Insurance  policy  language  is ambiguous  if  it  is  susceptible  to  more  than  one  reasonable interpretation.")  (citation  and  internal  quotation  marks omitted).

¶44  The ambiguity is deepened by the fact that the phrase "local  rules  of  law  as  to  procedure  and  evidence"  does  not, contrary  to  the  assumption  shared  by  both  IDS  and  the arbitration  panel,  give  any  indication  that  those  rules  are  to be  found  in  one  particular  chapter  of  the  statutes  rather  than another.   In  fact,  the  phrase  gives  no  indication  that  the  rules are  to  be  found  in  the  statutes  at all.   Quite  to  the  contrary, "local  rules"  might  easily  and  plausibly  be  read  as  a  reference to  the  rules  of  the  circuit  court  of  the  county  in  which  the claim  is  brought,  or  the  local  federal  district  court,  both  of

---

[19] In its brief, IDS repeatedly notes that the Marlowes have "conceded" that the arbitration clause is ambiguous, and IDS nowhere asserts that the phrase "local rules" is unambiguous. Amicus Wisconsin Insurance Alliance likewise suggested at oral argument that it believes the clause to be ambiguous.   We therefore assume that it is now undisputed that the clause is ambiguous.

which may promulgate such rules.[20]   See, e.g., <u>Drow v. Schwarz</u>, 225 Wis. 2d 362, ¶16, 592 N.W.2d 623 (1999) (referring to circuit court rules as "local rules"); <u>State ex rel. Mitsubishi Heavy Indus. Am., Inc. v. Cir. Ct. for Milwaukee Cnty.</u>, 2000 WI 16, ¶37, 233 Wis. 2d 1, 605 N.W.2d 868 (Abrahamson, C.J., concurring) (referring to federal district court rules as "local rules").   This possibility is especially likely given that we read the disputed ambiguous provision, as always, within the context of the policy as a whole.   See, e.g., <u>Wadzinski v. Auto-Owners Ins. Co.</u>, 2012 WI 75, ¶16, 342 Wis. 2d 311, 818 N.W.2d 819.   Outside the disputed arbitration clause, the policy twice refers to Wis. Stat. ch. 344[21] with specific, formal legal citations.[22]   If the drafters intended to refer to ch. 804, they

---

[20] In its opinion denying the Marlowes' motion for reconsideration, the panel dismissed this possibility because circuit court rules are meant only to supplement the statutes and because the Brown County Circuit Court happened not to have promulgated any rules regarding evidence.   Neither explanation is persuasive.   A party may well want the benefit of the more comprehensive set of procedures that court rules, in conjunction with the statutes they supplement, provide.   Moreover, policies are presumably drafted to cover a wide range of circumstances, and the fact that this particular dispute wound up in a circuit court with no local rules concerning evidence is neither here nor there when it comes to the provision's significance.

[21] Wisconsin Stat. ch. 344 is a chapter of Wisconsin's Financial Responsibility law concerning vehicles.

[22] It may be instructive to note that the policy's reference to Wis. Stat. ch. 344 is a good example of an explicit, specific, and clearly drafted arbitration clause within the meaning of <u>Borst</u>.   Had the policy referred to ch. 804 in a similar fashion, there would be no question that IDS was entitled to employ the discovery devices described in the chapter.

obviously knew how to use similarly clear and comprehensible language, rather than the opaque phrase, "local rules."[23]

¶45 Even if we take the considerable leap IDS asks of us and accept, for the sake of argument, that "local rules" refers to the Wisconsin statutes, we are still left with an even more difficult and even more important question, the question that lies at the root of this entire case: which statute? There is

---

[23] Without citation or explanation, the dissent posits that "it is not plausible that the" parties "intended to mean that arbitrators are bound by rules of procedure and evidence established by the circuit courts——county by county——but need not follow the procedural and evidentiary rules embodied in state law." Dissent, ¶130. There are two problems with this argument. First, it proposes a choice that does not exist. Circuit court rules cannot conflict with state law, see, e.g., Hefty v. Strickhouser, 2008 WI 96, ¶46, 312 Wis. 2d 530, 752 N.W.2d 820, and there is no contention here that anyone is free to disregard the Wisconsin statutes. Second, we do not find it so implausible that a policy might adopt local court rules concerning arbitration discovery. Implausibility may be partly in the eye of the beholder, but if such a tack is implausible, there are at least a few parties around the country behaving implausibly. See, e.g., Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550, 553 n.1 (W. Va. 2012) (quoting an arbitration clause that included the provision that "[e]ach party shall be entitled to full discovery in accordance with the local rules of court in the event that arbitration is invoked . . . .") (emphasis added); Shainin II, LLC v. Allen, No. C06-420P, unpublished slip op., 2006 WL 2473495, at *8 (W.D. Wash. Aug. 28, 2006) (making reference to arbitration agreements that "provide for discovery 'as provided by the United States Federal Rules of Civil Procedure as modified by the Local Rules for the Western District of Washington.'") (quoting the agreements); Sprint Commc'ns Co. L.P. v. Mushahada Int'l USA, Inc., No. Civ.A. 05-2168-KHV, unpublished slip op., 2005 WL 1842845, at *1 (D. Kan. July 29, 2005) (paraphrasing an agreement which provided "that in the event a dispute under the agreement is submitted to arbitration . . . , any discovery would be governed by the local rules of the District of Kansas.").

36

nothing in the clause at issue even intimating that "local rules" means Wis. Stat. ch. 804 and not Wis. Stat. § 788.07. It is axiomatic that where a more specific law on a given subject is potentially in conflict with a more general one on the same subject, the former controls. See, e.g., Pruitt v. State, 16 Wis. 2d 169, 173, 114 N.W.2d 148 (1962). Although this case presents a somewhat atypical example of that rule (because we do not have a statutory conflict so much as uncertainty as to which of two consistent statutes apply), we believe the canon still cuts against IDS's interpretation. Chapter 804 applies to all civil litigation in the Wisconsin courts. By contrast, ch. 788 applies to arbitration only. In the literal sense, then, § 788.07 is the local rule as respects discovery in arbitration proceedings, if the "locality" is considered the entire state, as IDS itself contends.[24]

¶46 Resisting that conclusion, the arbitration panel wrote, in its ruling on the motion for reconsideration, that "[t]he few courts which have interpreted the phrase [i.e., "local rules of law as to procedure and evidence,"] have

---

[24] In its denial of the Marlowes' motion to reconsider, the arbitration panel discounted the suggestion that "local rules" could signify Wis. Stat. § 788.07 because that statute "is certainly no more a 'local rule' than [Wis. Stat. ch.] 804 is." We could not agree more with the premise, but we do not see how the panel used it to draw its conclusion. If Borst means anything, it means that there is a presumption in favor of § 788.07. For reasons it did not articulate, the arbitration panel appeared to apply the opposite presumption. The question is whether Wis. Stat. ch. 804 is "any more a 'local rule'" than § 788.07, not vice versa, and the answer is indisputably no.

37

suggested, as this panel has, that it means the rules of civil procedure as applied in state courts."   In support, the panel cited five cases, none of which are apposite.   Beginning with the citation least helpful to the panel's position, Workman v. Superior Court reaches the opposite conclusion from the arbitrators here, holding that an arbitration clause providing that "local rules of law as to procedure and evidence" would apply did not require compliance with the state's code of civil procedure.   176 Cal. App. 3d 493, 501 n.3 (Ct. App. 1986). Three of the remaining cases relied upon by the panel to interpret the phrase "local rules" are distinguishable from the present matter, as those cases examined only the phrase so as to resolve disputes concerning choice of law or forum.   They did not even purport to determine whether a court statute prevailed over an arbitration statute.   See Miller v. Allstate Ins. Co., 763 A.2d 401, 403 (Pa. Super. Ct. 2000); Costello v. Liberty Mut. Fire Ins. Co., 876 N.E.2d 115, 120-21 (Ill. App. 2007); Brown v. Great N. Ins. Co., No. Civ.A. 3:05-CV-1791, 2006 WL 538186, unpublished slip op. at *1-2 (M.D. Pa. Mar. 2, 2006).[25]

¶47  The only Wisconsin precedent cited by the arbitration panel is just as easily distinguishable.   As the arbitrators saw it, Lukowski v. Dankert, 184 Wis. 2d 142, 515 N.W.2d 883 (1994)

---

[25] Brown does make a passing reference to "state procedural rules" in two cursory sentences that include no analysis or citations, and does not, at any rate, say anything about favoring trial procedure over arbitration procedure.   Brown v. Great N. Ins. Co., No. Civ.A. 3:05-CV-1791, 2006 WL 538186, unpublished slip op. at *1-2 (M.D. Pa. Mar. 2, 2006).

confirmed that "Wisconsin procedural rules" should be applied in circumstances like these. At the risk of repeating ourselves, Wis. Stat. § 788.07 <u>is</u> a Wisconsin procedural rule, as evidenced by the fact that it is found in the same code as Wis. Stat. ch. 804. Additionally, <u>Lukowski</u> made only one statement regarding "local rules of law," namely, that it created "a legitimate expectation that the governing law would be followed and applied properly." <u>Id.</u> at 152 (footnote omitted). In finding that the panel acted within its discretion, the <u>Lukowski</u> court did not suggest that there was any dispute between the parties as to <u>what</u> the governing law was, the issue at the heart of the present matter. We have no quarrel with this uncontroversial statement by <u>Lukowski</u> but it is, like all of the cases cited by the panel, off-point.[26] To summarize, none of the decisions relied upon by the panel involved a statute designed to

---

[26] We are uncertain as to what significance the dissent ascribes to <u>Lukowski v. Dankert</u>, 184 Wis. 2d 142, 515 N.W.2d 883 (1994). It includes a fairly lengthy exposition of the case, but places it in a section denominated "Factual Background." Dissent, ¶¶84-87. Like the arbitration panel, the dissent emphasizes that the <u>Lukowski</u> court interpreted the phrase "local rules of law as to procedure and evidence" as a reference to Wisconsin law. <u>Id.</u>, ¶85 ("All parties in <u>Lukowski</u> interpreted this language to refer to <u>Wisconsin</u> law.") (emphasis in original); <u>id.</u>, ¶86 ("The governing law on procedure and evidence was deemed to be Wisconsin law in statutes and cases."). We do not disagree, but cannot perceive the relevance of this fact. As in <u>Lukowski</u>, it is obvious that Wisconsin law governs the instant matter. That gets us nowhere, however, as the real question is <u>which</u> Wisconsin law. <u>Lukowski</u> happened to involve the same few words in an arbitration contract, but it did not consider any remotely similar legal question and consequently does not assist our inquiry here.

delineate the discovery procedures available at arbitration. Deference to the legislature was consequently not a factor in those cases, and it is a factor we cannot dismiss out of hand here in light of § 788.07's clear directive.

¶48  Lastly, we consider all of the above with reference to another well-established rule of contract law, that ambiguities are resolved against the drafter.  See, e.g., Hirschhorn v. Auto-Owners Ins. Co., 2012 WI 20, ¶23, 338 Wis. 2d 761, 809 N.W.2d 529 ("[A]mbiguities are construed against the insurer, the drafter of the policy.") (citations omitted).  That rule has particular force here, as Borst specifically requires the drafter to use care in making clear its intention to resort to arbitration discovery more expansive than that provided in Wis. Stat. § 788.07.

¶49  In light of the foregoing, it cannot be said that the "local rules" provision was an explicit, specific, and clearly drafted reference to Wis. Stat. ch. 804, or to any other discovery rules, as required by Borst.  The clause was none of

40

those things.[27]   The panel erred in ruling to the contrary, and should instead have limited discovery to the confines of Wis. Stat. § 788.07.

## 2) The Arbitration Panel Did Not Have the Exclusive Authority To Determine the Discovery Procedure

¶50 The court of appeals held that the "local rules" provision "arguably refers to the scope of discovery," Marlowe, 340 Wis. 2d 594, ¶27, thereby endowing the arbitration panel with the "exclusive authority," id., ¶22, to control discovery, free from any judicial review.  To justify that conclusion, the court of appeals misconstrued our precedent, and we therefore hold that the panel did not have the sole power to regulate discovery.

¶51 As with the preceding issue, our examination of the arbitration panel's authority vis-à-vis the courts centers on Borst.  The court of appeals discerned in Borst the proposition that the construction of an arbitration provision that "arguably

---

[27] At oral argument, counsel for amicus Wisconsin Insurance Alliance suggested that "express," as used in Borst, "doesn't mean that it's not ambiguous, it means that there is some language, direct language in the contract . . . that addresses this issue."  If that were true, the word would have no real meaning.  "Express" has a far stronger connotation: "directly and distinctly stated or expressed rather than implied or left to inference: not dubious or ambiguous."  Webster's Third New International Dictionary 803 (2002) (emphasis added).  Of course, the "local rules" provision was by no stretch of the imagination "directly and distinctly stated," at least not in any sense relating to its supposed reference to Wis. Stat. ch. 804.  Thus, even under the narrowest reading of Borst's holding, the policy would not suffice to entitle IDS to ch. 804 discovery.

refs to the scope of discovery" lies within the exclusive province of the panel. Marlowe, 340 Wis. 2d 594, ¶27. Borst said no such thing. The policy at issue there was "silent as to the terms of discovery." Borst, 291 Wis. 2d 361, ¶53. Neither the word "arguably" nor any other synonym appears in the decision. The Borst court declared, emphatically, "that arbitrators have no inherent authority to dictate the scope of discovery, and absent an express agreement to the contrary, the parties are limited to depositions as spelled out in Chapter 788." Id., ¶56 (emphasis added). The court of appeals turned that clear directive on its head in this case by creating a rule that an ambiguous policy that arguably demonstrates an agreement to go outside of Wis. Stat. § 788.07 insulates the panel's order from judicial review. For reasons we have already surveyed, the Borst rule is a sensible one and, at any rate, it is not for the court of appeals to insert a qualification into our decision that we did not place there ourselves.

¶52 Part of the court of appeals' confusion on this point stemmed from its reading of Employers. In that case, an arbitration agreement provided that each party was to "'submit its case' to the arbitrators within thirty days of the arbitrators' appointment." Employers, 202 Wis. 2d at 684. After the thirty days elapsed, Employers sought further discovery, which the panel declined to grant. When the matter reached it, the court of appeals considered the question of whether "submit its case" meant "submit all factual materials and arguments" or just "submit all arguments." As the court of

42

appeals read the agreement, if the phrase "submit its case" signified "submit all arguments," the panel would have enjoyed the discretion to allow discovery after the lapsing of the 30-day deadline. In a passage that caught the attention of the court of appeals in this case, the Employers court wrote:

> Because the language in the agreement is vague and indefinite as to exactly what procedures should be used to arrive at that determination, it is within the province of the arbitration panel, as the interpreter of the contract language, to devise such procedures as it considers necessary to reach a decision, as long as those procedures are compatible with the contract language and do not violate the law.

Id. at 686.

¶53 In the present matter, the court of appeals collapsed the quoted rule from Employers with the rule articulated in Borst, holding that "under Borst and Employers, the panel was entitled to interpret the phrase and determine the scope of discovery it allowed." Marlowe, 340 Wis. 2d 594, ¶27 (emphasis added). Borst and Employers, however, set forth very different rules, almost diametrically opposed rules, and only one applies here. We resolved the question implicated by the dispute between the Marlowes and IDS in Borst. That question was, in a nutshell, what does a policy need to say in order to allow for discovery outside of Wis. Stat. § 788.07? The answer, we repeat, is: an explicit, specific, and clearly drafted reference to another set of discovery guidelines. When such language is not included in the policy, we made clear in Borst, the courts have not just the option, but the duty to correct a panel that

43

refuses to apply the statute, lest the judiciary neglects its responsibility to enforce the duly-enacted laws of the legislature.

¶54 Employers answered a different, narrower question, and with substantially different facts before it: can an arbitration panel extend the time for submissions when the contract is ambiguous on the subject? Crucially, the court of appeals in Employers was not addressing an issue that the legislature had already addressed, so there was no default rule to apply in the case of ambiguity. The court of appeals therefore properly resorted to the more deferential standard that governs judicial review of arbitration rulings in the absence of any legislation on point. Equally importantly, the arbitration clause under review in Employers informed the panel that it was "relieved of all judicial formalities and may abstain from following the strict rules of law," a factor the court emphasized in its opinion. Id. at 686 ("Given the broad power the clause gives to the panel in controlling procedure, we will defer to its interpretation of an ambiguous phrase regulating procedure.") (Emphasis added.)

¶55 Seen in this light, the Employers court correctly fell back on the general principle that an arbitration panel should have exclusive authority to dictate procedure where the arbitration clause allows it to and where the legislature has provided no on-point default rule. See, e.g., City of Madison, 144 Wis. 2d at 586 (holding that the courts will uphold an arbitrator's decision on whether an award is warranted, and if

44

so, its size, unless "there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy."). Notwithstanding the dissent's protestations to the contrary, the panel here had no such luxury. For the arbitration clause under consideration, far from relieving the panel of "judicial formalities and . . . strict rules of law," required the panel to apply such rules, it simply did not specify which rules. Furthermore, the legislature has addressed the type of discovery procedure to be employed in arbitration proceedings and we must defer to its choice. Simply put, Employers answered a different question, under different facts, and with far different legal considerations being brought to bear. Both Borst and Employers were rightly decided, and there is no tension between them. Borst controls this case, and it requires us to instruct the panel to apply Wis. Stat. § 788.07, as the legislature has directed.

¶56 Following a similar path to that of the court of appeals, the dissent takes exception to our treatment of the panel's decision, opining that we "misstate[]" the standard of review and accord its ruling insufficient deference. Dissent, ¶¶124-132. To the dissent, the more deferential Employers-type standard applies, and under that standard we "would be hard pressed to argue that there is no reasonable basis for the panel's construction of the" policy. Id., ¶130. For starters, the question under the approach advocated by the dissent would not be whether there was a "reasonable basis for the panel's construction," it would be the far narrower and more restrictive

45

question of whether it constituted a "perverse misconstruction." Id., ¶133. It is true, as the dissent maintains, that the answer would be negative, and that proves our point. Borst did not mention, let alone employ, the "perverse misconstruction" test. Instead, Borst taught, by example, that an arbitration panel can order full Wis. Stat. ch. 804 discovery only when the agreement contains an explicit, specific, and clearly drafted clause allowing for such discovery, and that courts will reverse where they disagree after exercising their own independent judgment. 291 Wis. 2d 361, ¶62 ("In this case, there were no set provisions in the insurance contract that detailed the terms of the discovery in the arbitration. Therefore, if the parties decide to conduct another arbitration, discovery will be limited to depositions as detailed in Wis. Stat. § 788.07.") (footnote omitted).

¶57 Imaginatively, the dissent endeavors to tie its recommended standard of review to Borst itself, declaring that it is proper "because Borst permits the scope of discovery to be set out in the contract." Dissent, ¶128. Borst did permit as much, but it also reversed a panel for ordering full discovery while paying no deference to the panel's ruling. In the pertinent section of its analysis, the Borst court did not even mention the panel's reasoning. 291 Wis. 2d 361, ¶¶53-62. Although Borst declared the contract "silent as to the terms of discovery," it was debated in the briefs, the certification, and the supreme court decision itself as to whether the policy incorporated rules drawn up by the American Arbitration

46

Association ("AAA"), which arguably would have provided some parameters for discovery. Id., ¶62 n.10. Notably, Borst did not discuss whether it might have been a "perverse misconstruction" or a "manifest disregard of the law" for the panel to rely on the AAA rules, but rather said that "there were no set provisions in the insurance contract that detailed the terms of the discovery in the arbitration" and that it was "unclear which set of arbitration rules promulgated by the AAA would be applicable." Id., ¶62 & n.10 (emphases added). These are not the words of a court looking for a "perverse misconstruction" or a "manifest disregard of the law." They are the words of a court doing exactly what it purports to be doing: evaluating, for itself, whether a policy contains an explicit, specific, and clearly drafted discovery clause.

¶58 Perhaps most to the point, if Borst really did share the dissent's view of the law, it would have said something about how a panel is largely insulated from judicial review in fashioning discovery so long as the policy contains a provision arguably on point, but enjoys no such insulation when the policy is silent. It would have been wholly unnecessary to set a bar for how a policy should address discovery. What is more, it would be especially odd to set that bar with reference to its own judicial analysis, rather than with reference to the arbitration panels that supposedly enjoy an almost unlimited freedom to interpret discovery clauses as they see fit. Surely the seven members of the Borst court would have foreseen that their opinion would be taken at face value, and that the

47

Wisconsin courts, our own included, would obey its instructions, which offer no inkling that they are directed only at arbitration panels and not also at the judiciary. Those instructions are to look for explicit, specific, and clearly drafted discovery clauses, and we follow them today. As before, the dissent's critique of our standard of review is in reality a call to overrule Borst, using one element of the decision, taken out of context, as a reason to eviscerate the rest of it. We are not persuaded by the call, and do not overrule Borst, either explicitly or, as the dissent requests, sub silentio.

¶59 As a final point, it warrants mention that Borst's requirement is far from onerous and that there is no reason to fear the dissent's dark warnings about the dire consequences to arbitration let loose by our decision. Dissent, ¶88 ("[T]he majority opinion undercuts the contractual authority of arbitrators and creates a serious disincentive for parties to agree to arbitration."); ¶123 (under the majority decision, "insurers will face a powerful disincentive to agree to arbitration, and the arbitration of contractual disputes will suffer a major setback."). Had IDS wanted the benefit of Wis. Stat. ch. 804 discovery, it could simply have said, in the policy it drafted, "discovery will be governed by Wis. Stat. ch.

804," or any number of equally clear and concise alternatives.[28] Unlike the dissent, we do not believe contract-drafters are so unskilled in their craft that the demand for these nine simple words or other equally straightforward formulations poses any danger of "supersed[ing] the parties' intentions."  Id., ¶114.[29] Borst placed IDS, along with all other Wisconsin insurers, on notice that ambiguous provisions would not suffice to grant recourse to expansive ch. 804 discovery.  Such a modest demand for clarity is not too much to ask when the legislature has unequivocally expressed its own reasonable preference on the matter.

## IV.  CONCLUSION

---

[28] At the hearing where it announced its ruling, the circuit court opined that the Marlowes would "be in the mud if [the arbitration clause] said local discovery rules," rather than just "local rules of law as to procedure and evidence." (Emphasis added).  We respectfully disagree.  As stated, Wis. Stat. § 788.07 is as much a "local discovery rule" as Wis. Stat. ch. 804.  Indeed, it is more of a local discovery rule as respects arbitration than ch. 804, which says nothing about arbitration.  The phrase "local discovery rules" would have suffered from the same fatal ambiguity as the phrase IDS selected.

[29] If the call we first issued in Borst and now reiterate today——for clear statements about the scope of discovery in arbitration agreements——does in fact have an adverse impact on the ability of an insurer to resolve disputes in arbitration, as the dissent worries, one can only conclude that it is because the insured is hesitant to consent to the type of discovery desired by the insurance company.  And if that is the case, it would not be so regrettable as the dissent alleges for fewer claims to be arbitrated, as the reduction would simply reflect a greater number of parties knowledgeably exercising their independent bargaining power, a change we should welcome, not dread.

49

¶60 We consider two issues: 1) whether the Marlowes were permitted to seek a declaratory judgment concerning the discovery dispute before the arbitration panel ruled on whether an award was appropriate and, if so, its amount; and 2) whether the panel properly established discovery procedures outside those outlined in Wis. Stat. § 788.07. Because no unusual circumstances justified an interlocutory appeal, we hold that the Marlowes' action in circuit court was premature. As to the second question, the legislature has set forth, in the form of § 788.07, a narrow scope of discovery for arbitration proceedings in the absence of an explicit, specific, and clearly drafted arbitration clause to the contrary. IDS failed to include any such language in its policy and we therefore instruct the panel to limit discovery to that provided for in § 788.07. Accordingly, we affirm the court of appeals insofar as it declined to allow the Marlowes an interlocutory appeal. However, insofar as the court of appeals granted IDS the benefit of full Wis. Stat. ch. 804 discovery, we modify its decision and instead direct the panel to cabin discovery to the depositions contemplated in § 788.07. Thus, the decision of the court of appeals is modified, and as modified, affirmed, and the cause is remanded to the arbitration panel with instructions.

*By the Court.*—The decision of the court of appeals is modified and affirmed, and, as modified, the cause is remanded to the arbitration panel with instructions.

¶61 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I agree with the majority opinion's conclusion that Wis. Stat. § 788.07 sets forth a narrow scope of discovery for arbitration proceedings in the absence of an explicit, specific, and clearly drafted arbitration clause to the contrary.

¶62 I also agree with the majority opinion's conclusion that parties to an arbitration can seek judicial intervention prior to the arbitrators' rendering an award only under special circumstances. These special circumstances are variously described in the majority opinion as "unusual circumstances," "compelling reason(s)," circumstances that "subject the aggrieved party to irreparable harm," "urgent or potentially irreparably prejudicial matters that demand the immediate attention of the courts," "especially urgent" circumstances, and circumstances that pose a "threat of irreparable harm." Majority op., ¶¶2, 20, 21, 60.

¶63 The majority then applies this rule to the present case and concludes that the Marlowes' action in the circuit court (and here) was premature because "no unusual circumstances justified an interlocutory appeal." Majority op., ¶¶2, 11, 22, 60.

¶64 Indeed, the majority goes so far as to say that the Marlowes did not suggest that the discovery dispute at arbitration was unusual in such a way as to justify intermediate intervention by the circuit court. Majority op., ¶21. On the contrary, the Marlowes made the logical and convincing argument that the arbitration panel's erroneous grant of broad discovery

1

subjected them to the full-blown, time-consuming and costly burdens of litigation without the benefit of a jury trial and without an adequate remedy.

¶65 The majority decides at ¶21 that the Marlowes' judicial action is premature. As a matter of logic, the opinion should end there. Surprisingly, it does not. It goes on for another 39 paragraphs grappling with numerous issues, some briefed and some not briefed.

¶66 The majority opinion's reasoning is internally inconsistent. Or, as the majority opinion prefers to put it, it "seems at first blush incongruous" to hold that Marlowe's court action is premature and no relief should be granted and then to give Marlowe the relief requested. Majority op., ¶22.

¶67 The inconsistency, or if you prefer, the "incongruity at first," second, or third blush, is evident because the reasons the majority uses to justify its deciding the substantive discovery issue also justify judicial intervention by the circuit court according to the rule set forth in the majority opinion: the case presents "special circumstances," "unusual or especially urgent circumstances," and "compelling reasons."

¶68 And what are the special, unusual or especially urgent circumstances or compelling reasons the majority gives for deciding the substantive issue in this premature action? To use the majority opinion's own words, if we did not decide this issue,

> we would allow an <u>erroneous rule to retain the force of law</u>, not only in this case, but in all others.

> Moreover, <u>further delay</u> of the issue's ultimate resolution would <u>impede</u> even further <u>the efficient disposition the parties bargained for</u> by agreeing to arbitration. Lastly, we will be <u>required to answer the important question presented by the discovery dispute sooner or later</u>. It would only <u>frustrate judicial economy</u> were we to unnecessarily put the question off for another day, particularly when we would thereby <u>cause arbitration in this case to proceed under the wrong statute in violation of a clear legislative dictate</u>.

Majority op., ¶22 (emphasis added).

¶69 Prohibiting the Marlowes from obtaining immediate judicial intervention at the circuit court on a clearly erroneous arbitration decision relating to discovery, to use the words of the majority opinion, "would allow an erroneous rule" to have the force of law in the Marlowes' case; would cause "further delay of the issue's ultimate resolution"; "would impede even further the efficient disposition the parties bargained for by agreeing to arbitration"; "would frustrate judicial economy"; and would "cause arbitration . . . to proceed under the wrong statute in violation of a clear legislative dictate." Furthermore, the circuit court "will be required to answer the important question presented by the discovery dispute sooner or later." Majority op., ¶22.

¶70 For the very reasoning and analysis set forth in the majority opinion, I conclude that the Marlowe matter presents special circumstances and that the adjudication was not premature at the circuit court or here.

¶71 For the reasons set forth, I write separately.

¶72 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

3

¶73 DAVID T. PROSSER, J. *(concurring in part, dissenting in part).* The court of appeals reversed the circuit court, concluding that a party in an arbitration "generally may not seek immediate circuit court review of an arbitration panel's intermediate decision. Instead, the party must wait and challenge that decision by seeking to vacate the panel's final award, pursuant to Wis. Stat. § 788.10."[1] The majority opinion affirms this determination, and I join that portion of the majority opinion that discusses the issue under the heading "The Interlocutory Appeal."

¶74 The court of appeals also reversed the circuit court by approving the arbitration panel's interpretation of a sentence in the arbitration provision of an insurance contract that arguably related to discovery. The majority opinion rejects this part of the court of appeals determination. Although I do not necessarily agree with all the language in the court of appeals opinion, I believe the holding on the second issue was essentially correct. Because the majority opinion comes to a different conclusion, I respectfully dissent from "The Discovery Dispute" portion of the opinion.

## I. FACTUAL BACKGROUND

¶75 Mary and Leslie Marlowe (the Marlowes) were involved in an automobile accident with an uninsured motorist. They made a claim for uninsured motorist coverage from their insurer, IDS Property Casualty Insurance Company (IDS). The Marlowes and IDS

---

[1] Marlowe v. IDS Prop. Cas. Ins. Co., 2012 WI App 51, ¶18, 340 Wis. 2d 594, 811 N.W.2d 894 (footnote omitted).

1

agreed to arbitrate the claim as provided in the Marlowes' insurance policy, and thereafter a three-member arbitration panel was selected.

¶76 A discovery dispute soon developed. IDS says that it sought discovery "to verify the existence and extent of the Plaintiffs' various alleged injuries." It explained that:

> Such discovery is necessary because it goes to the essence of the claims that the Marlowes have put in issue, namely the existence and extent of their alleged injuries. The alleged injuries arise from a rear-end vehicle accident with minimal damage to the vehicle, but with claimed medical specials already exceeding $60,000.00, and with a claim for permanent injury.

¶77 The Marlowes asserted in the complaint that started this case that IDS "attempted to pursue discovery of the plaintiffs through the use of written interrogatories, requests for production of documents, medical and employment authorizations, income tax return releases, depositions of the plaintiffs and treating healthcare providers, and defense medical examinations." IDS admitted these allegations in its answer.

¶78 The Marlowes refused to comply with IDS's discovery demands.

¶79 IDS then asked the arbitration panel to interpret language in the arbitration provision in relation to the discovery dispute. IDS claimed that a sentence in the provision——namely, "Local rules of law as to procedure and evidence will apply"——authorized discovery pursuant to the procedures in Wis. Stat. ch. 804, which is the chapter, in

2

Wisconsin's code of civil procedure, on "Depositions and Discovery."

¶80 In October 2010 the arbitration panel issued a unanimous decision interpreting the "Local rules of law" sentence as applying to Chapter 804 of the Wisconsin Statutes. The panel recognized that this court's decision in Borst v. Allstate Insurance Co., 2006 WI 70, 291 Wis. 2d 361, 717 N.W.2d 42, "drastically circumscribe[d] the discovery that can be taken in arbitration proceedings." However, the panel relied upon an approved exception to the limited-discovery rule that permits expanded discovery when the parties' contract expressly provides for it. The panel concluded that the "Local rules of law" sentence denoted "the civil rules of procedure that govern court proceedings daily in local courtrooms." The panel asserted that Chapter 804 does "not contemplate unfettered discovery" but rather "discovery that is quick and efficient, but cost effective." The panel put limitations on future depositions and noted that a formal advance order would be required for any physical examination of Mary Marlowe.

¶81 Significantly, the arbitration panel declared: "Nothing in Borst, or any other decision cited, deprives the panel of authority to implement the clear terms of the agreement that govern the parties' relationship. Indeed, that is the panel's responsibility."

¶82 Through their attorneys, the Marlowes filed a lengthy and well-argued letter brief seeking reconsideration of the panel's decision. Many of the points made in the brief are

3

adopted by the majority opinion. However, the Marlowes' brief conceded that the panel's "construction of this ambiguous policy language is one that could be reasonably made."

¶83 The panel responded by issuing a supplementary decision affirming its ruling and answering the points in the Marlowes' brief. The supplementary decision relied in part on Lukowski v. Dankert, 184 Wis. 2d 142, 515 N.W.2d 883 (1994).

¶84 In Lukowski, the plaintiff suffered personal injuries when the truck in which she was riding overturned and she was ejected through the sunroof. Id. at 146. When the plaintiff made a claim against her insurer for uninsured motorist coverage, her claim was submitted to arbitration. Id. at 146–47. The arbitration panel determined the full extent of the plaintiff's damages but reduced her award by 40 percent because the plaintiff had not been wearing a seatbelt. Id. at 147. In other words, the panel found the plaintiff 40 percent causally negligent for her injuries──and it did so without expert testimony presented by the insurer, as was normally required under Wisconsin case law. Id. at 147–48.

¶85 Ms. Lukowski's insurance policy contained the identical language contained in the Marlowes' policy: "Local rules of law as to procedure and evidence will apply."[2] Id. at 152. All parties in Lukowski interpreted this language to refer to Wisconsin law. The plaintiff asserted that the arbitration

---

[2] The "Local rules of law" language was not present in the policy at issue in Borst v. Allstate Insurance Co., 2006 WI 70, 291 Wis. 2d 361, 717 N.W.2d 42.

panel had not followed Wisconsin case law.  Id. at 151.  The insurer insisted that the panel had acknowledged Wisconsin law but distinguished the plaintiff's case from other cases on grounds that expert testimony was not required when a party's injuries resulted from her ejection from the vehicle because she did not wear a seatbelt.

¶86  This court ratified the parties' interpretation of the sentence on "Local rules of law": "[T]he parties had a legitimate expectation that the governing law would be followed and applied properly."  Id. at 152 (footnote omitted).  The governing law on procedure and evidence was deemed to be Wisconsin law in statutes and cases.  See id. at 154.

¶87  In the present case, the arbitration panel construed the "Local rules of law" sentence the same as the arbitration panel, the court of appeals, and this court had construed it in Lukowski.  The Brown County Circuit Court overturned the panel's construction, and the court of appeals then reversed the circuit court.  The majority now sides with the circuit court.

## II. DISCUSSION

¶88  The majority opinion is grounded on the premise that arbitrations are different from civil court trials.  This premise is unassailable.  However, the majority uses the premise to severely restrict arbitration discovery not only under the arbitration statutes but also under the parties' insurance contract——notwithstanding applicable language to the contrary.  In the process, the majority opinion undercuts the contractual authority of arbitrators and creates a serious disincentive for

5

parties to agree to arbitration. In sum, despite its good intentions, the majority opinion goes too far.

## A. The Borst Certification

¶89 In the Borst case, the court of appeals certified three questions including the following: "Other than the deposition procedure outlined in Wis. Stat. § 788.07, is the nature and extent of discovery during the arbitration process governed by contract, the arbitrators' inherent authority, or a combination of the two?" Borst, 291 Wis. 2d 361, ¶2. The Borst court summarized its answer as follows: "Arbitrators have no inherent authority to dictate the scope of discovery, and absent an express agreement, the parties are limited to the procedure for depositions, as described in Wis. Stat. § 788.07." Id., ¶3.

¶90 The question posed in the Borst certification was provocative because of its reference to the "inherent authority" of arbitrators. In Lukowski, the court had declared that "[a]n arbitrator obtains authority only from the contract of the parties and therefore is confined to the interpretation of that contract." Lukowski, 184 Wis. 2d at 152; see also Nicolet High Sch. Dist. v. Nicolet Educ. Ass'n, 118 Wis. 2d 707, 714, 348 N.W.2d 175 (1984); Milwaukee Prof'l Firefighters, Local 215 v. City of Milwaukee, 78 Wis. 2d 1, 21, 253 N.W.2d 481 (1977). Thus, the certified question posited an option that this court had rejected repeatedly.

¶91 The certified question appears to have diverted the court's attention from the possibility that the arbitration statutes themselves provide authority for other discovery, and

6

led to the court's creation of non-statutory obstacles for arbitrators in construing contracts that provide for arbitration. These conclusions are admittedly much clearer to me in hindsight than they were when I joined the Borst opinion in 2006. They require explanation.

### B. The Borst Decision

¶92 Looking solely at the arbitration statutes, one perceives two sections that bear on discovery: Wis. Stat. §§ 788.06 and 788.07. All the attention has been focused on § 788.07, which reads:

> Depositions. Upon petition, approved by the arbitrators or by a majority of them, any court of record in and for the county in which such arbitrators, or a majority of them, are sitting may direct the taking of depositions to be used as evidence before the arbitrators, in the same manner and for the same reasons as provided by law for the taking of depositions in suits or proceedings pending in the courts of record in this state.

¶93 The Borst court explained the factual background of that case when it interpreted Wis. Stat. § 788.07. Plaintiff Borst was injured in an accident with an uninsured motorist. Borst, 291 Wis. 2d 361, ¶5. The insurer believed that Borst was 50 percent liable for the accident. Id., ¶6. It requested that all medical records related to the plaintiff's claim be transmitted to it after Borst finished his treatment. Id. Borst provided these records as well as records of his wage loss. Id., ¶7.

¶94 After an arbitration panel was created, Allstate served Borst with "a set of written interrogatories, a request

7

for document production, and medical authorizations." Id., ¶10. These requests were resisted and challenged in a motion to the arbitration panel to quash the discovery. Id. Allstate then raised the stakes, asking the panel to approve a deposition and to authorize a release of records. Id. The panel ultimately ordered Borst to (1) give a deposition, (2) supply medical authorizations, and (3) cooperate with other appropriate discovery. Id. In its argument to the panel, Allstate relied heavily on the proof of claim provisions in the insurance policy. Id.

¶95 Borst refused to submit to a deposition, and Allstate elected not to press that issue, although it did not waive its "right" to a deposition of Borst. Id., ¶11. It did depose the other driver involved in the accident, while Borst provided a list of damages and confirmed the accuracy of all pre-arbitration discovery. Id.

¶96 The Borst court summarized the parties' arguments:

Borst essentially contends that discovery in arbitration is the exception and not the rule. Borst argues that in an arbitration of a first party insurance claim, and absent extraordinary circumstances, the parties should simply submit their cases to the arbitrators. Unfettered discovery, Borst argues, defeats the general purposes of arbitration to be faster, less formal, and less expensive. . . . Furthermore, in this particular case, Borst maintains that there was no real need for discovery, given that there was no claim of permanent injury, the medical records and bills had been supplied, and Allstate claimed to have fully assessed liability before it made its offer [of $5,000 to settle the case].

Id., ¶54 (emphasis added).

8

¶97 Allstate argued that inasmuch as the legislature allowed for the taking of depositions during arbitration, it must have allowed for other less costly forms of discovery and that arbitrators should have discretion, based on their evaluation of the facts of the case, to determine the extent of the discovery permitted. Id., ¶55.

¶98 The Borst court then said:

> We conclude that arbitrators have no inherent authority to dictate the scope of discovery, and absent an express agreement to the contrary, the parties are limited to depositions as spelled out in Chapter 788. . . .
>
> In our view, arbitrators do not have the inherent authority to determine the necessity and scope of discovery allowed because, quite simply, there is no statutory authority providing for discovery outside of the procedures for depositions enumerated in Wis. Stat. § 788.07.

Id., ¶¶56-57.

¶99 The court asserted that Wis. Stat. § 788.07 did not speak to "interrogatories, requests for production, or medical authorizations. Indeed, even looking beyond this particular section, the Wisconsin Arbitration Act does not speak to any other form of discovery." Id., ¶58.[3]

---

[3] Attorney Mark Frankel submitted an amicus brief in the Borst case on behalf of the Alternative Dispute Resolution (ADR) Section of the State Bar of Wisconsin. After the Borst decision was issued, Frankel wrote an analysis of the case for the Wisconsin Lawyer, observing that Borst's holding that "arbitrators have no inherent ability to determine the necessity and scope of allowable discovery" was a "surprise" to many practitioners in the field of ADR. Mark A. Frankel, Borst Clarifies Arbitration Procedures, Wis. Law., Dec. 2006, at 8, 11.

¶100 There is no dispute that the Borst case is the controlling law in Wisconsin and applies here unless it is clarified, modified, or distinguished on the facts. In my view, this court should pursue all these options.

C. The Applicable Statutes

¶101 The court should carefully review Borst's interpretation of the arbitration statutes vis-á-vis discovery. Borst did not consider any alternative interpretation of Wis. Stat. § 788.07 and it did not interpret Wis. Stat. § 788.06 at all.

¶102 Wisconsin Stat. § 788.07, by its terms, requires a party to petition for a deposition. The petition must be "approved by the arbitrators or by a majority of them," and then submitted to "any court of record in and for the county in which such arbitrators . . . are sitting." Wis. Stat. § 788.07. The statute appears to set up a very rigorous process for obtaining the deposition of either a party or a non-party because it requires the party seeking a deposition to go to court.

¶103 In Employers Insurance of Wausau v. Jackson, 190 Wis. 2d 597, 610, 613, 527 N.W.2d 681 (1995), this court observed that the basic tenet of arbitration is avoiding the courts. Thus, Wis. Stat. § 788.07 can be viewed as setting up a barrier to one of the most intrusive and expensive forms of

10

discovery, rather than precluding less costly forms that might obviate the need for a deposition.[4]

¶104 This alternative view of the statute is arguably inconsistent with the doctrine of expressio unius est exclusio alterius ("the express mention of one matter excludes other similar matters [that are] not mentioned"). See FAS, LLC v. Town of Bass Lake, 2007 WI 73, ¶27, 301 Wis. 2d 321, 733 N.W.2d 287. But it is perfectly consistent with insurance contracts that give an insurer broad authority to obtain "proof of claim" information from its insured in processing a claim.[5] That form of "discovery" does not require statutory authority. In my view, it is difficult to explain why the law would permit depositions but prohibit more modest, less costly means of obtaining pre-hearing discovery.[6]

¶105 This alternative view also is consistent with a reasonable interpretation of Wis. Stat. § 788.06(2), a provision of the arbitration statutes that has heretofore been ignored. That subsection provides:

---

[4] See Carlson Heating, Inc. v. Onchuck, 104 Wis. 2d 175, 180, 311 N.W.2d 673 (Ct. App. 1981) (stating that adequate preparation by counsel, "with full knowledge of the facts before them[,]" will result in more orderly trials and in many instances will avoid needless trials). The same principle applies to depositions and to arbitration hearings.

[5] See subpart D, infra.

[6] Query: Does Wis. Stat. § 788.07 contemplate depositions upon written questions, as authorized under Wis. Stat. § 804.06? If it does, why would interrogatories be prohibited?

11

(2) Any arbitrator may issue a subpoena under ch. 885 or may furnish blank forms therefor to a representative for any party to the arbitration. The representative may issue a subpoena under s. 805.07. The arbitrator or representative who issues the subpoena shall sign the subpoena and provide that the subpoena is served as prescribed in s. 805.07(5). If any person so served neglects or refuses to obey the subpoena, the issuing party may petition the circuit court for the county in which the hearing is held to impose a remedial sanction under ch. 785 in the same manner provided for witnesses in circuit court. Witnesses and interpreters attending before an arbitration shall receive fees as prescribed in s. 814.67.

¶106 The majority contends that neither an arbitrator nor the representative of a party may issue a subpoena or a subpoena duces tecum for anything connected with discovery. Majority op., ¶34. It contends that all subpoenas issued under Wis. Stat. § 788.06 must be for the hearing itself. Id. This makes little sense. The attendance of witnesses at a deposition may be compelled by subpoena. Wis. Stat. §§ 804.05(1), 805.07. A subpoena may be served requiring a person to produce designated materials. Wis. Stat. § 804.05(2)–(3). Although a deposition may proceed without a subpoena, a subpoena may be necessary if a witness fails to comply with other notice. If a subpoena may be issued for a deposition, then Wis. Stat. § 788.06 is not limited to subpoenas for hearings.[7]

---

[7] The title of Wis. Stat. § 788.06——"Hearings before arbitrators; procedure"——covers two subsections, the first subsection related to hearings and the second subsection related to procedure. The procedure applies to more than hearings because of the references to Wis. Stat. § 805.07.

12

¶107 Wisconsin Stat. § 788.06 twice refers to Wis. Stat. § 805.07, which specifically includes subpoenas for depositions, § 805.07(1), as well as subpoenas requiring the production of materials such as books, papers, and documents, § 805.07(2). Section 788.06 also provides that if a subpoena is not obeyed, "the issuing party [that is, the party that issued the subpoena] may petition the circuit court for the county in which the hearing is held to impose a remedial sanction." (Emphasis added.) The emphasized language implies that the circuit court does not normally issue the subpoena for a deposition. In addition, it would be curious if arbitrators who had issued subpoenas for the hearing had to petition the circuit court for a remedy if their subpoenas were not obeyed.

¶108 The present Wis. Stat. § 788.06 became law in 1986. See 1985 Wis. Act 168. The revised law, championed by the Wisconsin Judicial Council, created a much more expansive subpoena provision than the previous statute and was intended to "conform[] arbitration subpoena practice to that followed in circuit court." Judicial Council Committee Note, 1985, Wis. Stat. § 788.06. Subpoena practice in circuit court includes discovery.

¶109 Once again, the present section refers twice to Wis. Stat. § 805.07; the previous section, Wis. Stat. § 788.06 (1983–84), made no such reference. The present section extends the subpoena power to the representative of a party (including but not limited to an attorney), in addition to arbitrators. The present section is not limited by its terms to the hearing, as

13

the previous section was.[8]  In short, the majority's conclusion that the statute applies only to subpoenas for hearings is strained at best.

¶110 The previous Wis. Stat. § 788.06 mirrored 9 U.S.C. § 7, which is narrowly written.[9]  Nonetheless, § 7 of the Federal

_____

[8] Wisconsin Stat. 788.06 (1983–84) provided:

When more than one arbitrator is agreed to, all the arbitrators shall sit at the hearing of the case unless, by consent in writing, all parties shall agree to proceed with the hearing with a less number.  <u>The arbitrators</u> selected either as prescribed in this chapter or otherwise, or a majority of them, <u>may summon in writing any person to attend before them or any of them as a witness</u> and in a proper case to bring with the person any book, record, document or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses in courts of general jurisdiction. The summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrator or arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the court in and for the county in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner now provided for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of this state.

(Emphasis added.)

[9] 9 U.S.C. § 7 provides:

The arbitrators selected either as prescribed in this title or otherwise, or a majority of them, may summon in writing any person to attend before them or

14

Arbitration Act has been interpreted to permit discovery, unless the discovery involves non-parties.[10]  This could explain why Wis. Stat. § 788.07, which has no parallel in the Federal Arbitration Act, was created——namely, to make depositions more difficult to obtain than other discovery.

¶111 In sum, Borst's interpretation of Wis. Stat. § 788.07 created a restrictive rule, but that rule disregarded the adjacent statute and may have misinterpreted the purpose of the deposition statute.

---

any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case. The fees for such attendance shall be the same as the fees of witnesses before masters of the United States courts. Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States.

[10] See, e.g., Life Receivables Trust v. Syndicate 102 at Lloyd's of London, 549 F.3d 210 (2d Cir. 2008); Stanton v. Paine Webber Jackson & Curtis, Inc., 685 F. Supp. 1241 (S.D. Fla. 1988); Gabriel Herrmann, Note, Discovering Policy Under the Federal Arbitration Act, 88 Cornell L. Rev. 779, 791-92 (2003) ("[C]ourts have generally construed [§ 7 of the Federal Arbitration Act] as granting arbitrators the power to order the parties to submit to pre-hearing discovery.").

15

D. Insurance Contract Provisions

¶112 The Borst case does not explain the relationship between statutory authority for discovery in an arbitration proceeding and contractual provisions that require an insured to provide information to its insurer. In Borst, the plaintiff's medical records and bills and wage loss records were supplied to the insurer. Borst, 291 Wis. 2d 361, ¶¶7, 54. Borst's initial position was to resist a deposition, which was clearly authorized by statute. The Borst court stated that "absent a contractual provision specifying how discovery will be handled, the parties are limited to the discovery procedures provided in the statutes." Id., ¶59. But the decision does not explain whether contractual provisions requiring such items as medical records and even a medical examination are included in "discovery."

¶113 The majority opinion in this case goes beyond Borst because it appears to nullify clear and sensible requirements in the insurance contract for the insured to supply information to the insurer in those situations where the parties agree to arbitration. The majority directs the arbitration panel, on remand, "to cabin discovery to the depositions contemplated in § 788.07, i.e., 'depositions to be used as evidence before the arbitrators.'" Majority op., ¶2; see also id., ¶11 ("[W]e return the action to the panel with instructions to limit discovery to the section enacted by the legislature for precisely these situations: Wis. Stat. § 788.07."); id., ¶23 ("[W]e instruct the arbitration panel to limit discovery to that

16

provided for in Wis. Stat. § 788.07."). The majority opinion sums up its second holding:

> [T]he legislature has set forth, in the form of § 788.07, a narrow scope of discovery for arbitration proceedings in the absence of an <u>explicit, specific, and clearly drafted arbitration clause to the contrary</u>. IDS failed to include any such language in its policy and we therefore instruct the panel to limit discovery to that provided for in § 788.07.

<u>Id.</u>, ¶2 (emphasis added).

¶114 The majority opinion appears to preclude the insurer from resorting to any provision <u>outside the arbitration section</u> of the insurance contract to obtain information that may be used to prepare for a possible arbitration hearing, i.e., prehearing discovery. Moreover, its tough new conditions——"explicit, specific, and clearly drafted" authority in the arbitration clause——provide a test that may supersede the parties' intentions.

¶115 The IDS insurance contract with the Marlowes is explicit, specific, and clear in this case:

> What To Do In Case Of An Auto Accident Or Loss
>
> . . . .
>
> 1. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and any witnesses.
>
> 2. A person seeking any coverage must:
>
> a. Cooperate with us in the investigation, settlement or defense of any claim or suit.
>
> . . . .

17

c.    Submit,   as   often   as   we   reasonably require:

(1)  To physical exams by physicians we select.  We will pay for these exams.

(2)  To  answer  questions  under  oath when asked and by anyone we name.  They shall do so separately,  outside  the  presence  of  any  other  person who may be requested to answer questions under oath in connection with the loss.  They must also sign copies of the answers.

d.    Authorize us  to obtain medical reports and other pertinent records.

e.    Submit a proof of loss when required by us.

. . . .

Medical Expense Coverage

We  will  pay  <u>reasonable</u>  expenses  for  necessary medical    (including    chiropractic) . . . services incurred  because  of  <u>bodily  injury</u>  sustained  by  an <u>insured</u> and caused by an accident.

. . . .

We have the right to:

1.   Obtain and use:

a.   Peer reviews; and

b.   Medical bill reviews

of the medical expenses and services to determine if they  are  reasonable  and  necessary  for  the  <u>bodily injury</u> sustained.

2.  Use  a  medical  examination  of  the  injured person to determine if:

a.    The <u>bodily injury</u> was caused by a motor vehicle accident; and

18

b.   The medical expenses and services are reasonable and necessary for the bodily injury sustained.

¶116 Here, IDS sought:

(a)  written interrogatories.

(b)  requests for production of documents.

(c)  medical and employment authorizations.

(d)  income tax return releases.

(e)  depositions of the plaintiff.

(f)  depositions of treating healthcare providers.

(g)  defense medical examinations.

¶117 Depositions of the plaintiffs and of the treating healthcare providers are explicitly authorized by Wis. Stat. § 788.07.

¶118 A defense medical examination is authorized by the contractual requirements to submit to "physical exams by physicians we select" and "a medical examination of the injured person."

¶119 Requests for production of documents and "medical and employment authorizations" appear to overlap.  These demands are grounded in the contractual authority "to obtain medical reports and other pertinent records," "proof of loss," and "[m]edical bill reviews."

¶120 Requests for income tax return releases may be related to plaintiff's medical expense deductions and/or plaintiff's income over time.  Such returns would have to be relevant and might require justification to the arbitrators but they are certainly not irrelevant per se.

19

¶121 Written interrogatories can be construed as falling under the requirement to "answer questions under oath when asked."

¶122 This case is factually different from the Borst case. Plaintiff Borst maintained that "there was no real need for discovery, given that there was no claim of permanent injury, the medical records and bills had been supplied, and Allstate claimed to have fully assessed liability" before it made a settlement offer. See ¶96, supra. Here, purportedly, there is a claim of permanent injury, and a request for medical records and bills that have not been supplied; furthermore, causation is at issue. See ¶76, supra.

¶123 Consequently, I believe it is imperative for the majority to explain why the discovery sought by IDS was not explicitly authorized by the insurance contract. If an insurer's agreement to participate in arbitration serves to nullify the insurer's contractual rights to obtain information from its insured, insurers will face a powerful disincentive to agree to arbitration, and the arbitration of contractual disputes will suffer a major setback.

### E. Standard of Review

¶124 There is one additional concern. I believe the majority opinion misstates the standard of review in relation to the arbitration panel's discussion of discovery.

¶125 The arbitration panel based its discovery ruling on a sentence in the arbitration provision of the insurance contract, namely, "Local rules of law as to procedure and evidence will

apply." As the majority opinion notes, the panel declared that: "The term 'local rules of [law as to] procedure[,'] as the policy employs it, is both clear and informative. It denotes the civil rules of procedure that govern court proceedings daily in local courtrooms." Majority op., ¶5. The panel added that, "If the purpose of arbitration is to achieve an expedited, efficient decision that ultimately determines the truth, more, not less, preparation for hearing is the most sensible way to achieve that, a goal the contract contemplates."

¶126 When an arbitration panel interprets a provision in an applicable contract, the panel's interpretation should be afforded some deference in review by a court. Such deference is captured by the concept of "perverse misconstruction."

¶127 "Courts will vacate an award when arbitrators exceeded their powers through 'perverse misconstruction,' positive misconduct, a manifest disregard of the law, or when the award is illegal or in violation of strong public policy." Baldwin-Woodville Area Sch. Dist. v. W. Cent. Educ. Ass'n, 2009 WI 51, ¶21, 317 Wis. 2d 691, 766 N.W.2d 591 (citations omitted). A court must apply the standard of review that is appropriate for the facts of the case.

¶128 An arbitration award involving the interpretation of a contract will not be disturbed unless it is the product of a perverse misconstruction of the contract, City of Oshkosh (Public Library) v. Oshkosh Public Library Clerical & Maintenance Employees Union Local 796-A, 99 Wis. 2d 95, 106, 299 N.W.2d 210 (1980) (citing cases), or unless the contract itself

21

violates the law. Here, the appropriate standard is the "perverse misconstruction" standard because <u>Borst</u> permits the scope of discovery to be set out in the contract.

¶129 In <u>Baldwin-Woodville</u>, the court stated:

> [W]e do not determine which construction——the arbitrator's or the District's——is more reasonable. <u>See</u> <u>Lukowski</u>, 184 Wis. 2d at 153 ("[T]his court will not upset the award even if this court might have decided the matter differently."). Instead, we will uphold an award if there is "some reasonable foundation for the interpretation of the contract offered in the decision." <u>Id.</u>

<u>Baldwin-Woodville</u>, 317 Wis. 2d 691, ¶22.

¶130 The majority would be hard pressed to argue that there is no reasonable basis for the panel's construction of the "Local rules of law" sentence in the arbitration provision of the contract. After all, the Marlowes' attorney conceded that the construction was "reasonably made." Moreover, the sentence——which is not unique to the Marlowes' insurance contract——must mean something, and it is not plausible that the sentence was intended to mean that arbitrators are bound by rules of procedure and evidence established by the circuit courts——county by county——but need not follow the procedural and evidentiary rules embodied in state law.

¶131 The majority's standard of review cites the perverse misconstruction standard but then disregards it. Majority op., ¶10.

¶132 Clearly, a contract may authorize prehearing discovery in an arbitration proceeding. It is not manifest disregard of the law or a violation of strong public policy to do so. The

22

issue here is whether the contract's reference to "Local rules of law" achieved this purpose.  This court is required to give a deferential review of the arbitration panel's construction of the contract language, not rely on extraneous law.

¶133 Proper application of the perverse misconstruction standard would put this case in a different light.

### III. CONCLUSION

¶134 Once again, the theme that permeates the majority opinion is that arbitrations are different from civil court trials and thus discovery in arbitration should be wholly different from discovery in court cases.

¶135 I agree that arbitration discovery should normally be simpler and more streamlined than civil court discovery. Arbitrators have a vested interest in making arbitration work as intended.  Thus, depriving arbitrators of virtually all authority to manage prehearing discovery, consistent with the goals of arbitration, and forcing the parties to discover evidence and present evidence primarily at the arbitration hearing, strike me as undercutting arbitration, not facilitating it.  After this decision, time will tell.

¶136 For the foregoing reasons, I respectfully concur in part and dissent in part.

23